**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:23-cv-

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity,
NICK FISHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

    Plaintiff Estate of Kevin Dizmang, by and through its personal representative Kenda James, and attorneys Kevin Mehr of Mehr Law PLLC, Harry Daniels of the Law Offices of Harry M. Daniels, LLC and Bakari Sellers of the Strom Law Firm, respectfully alleges for this Complaint and Jury Demand as follows:

**<u>INTRODUCTION:</u>**

1



1. The above photo shows Kevin Dizmang as he sat unresponsive, handcuffed behind his back, after paramedic Nicholas Fisher tackled him and placed him in a chokehold for nearly two minutes. Members of the Colorado Springs Police Department "Critical Response Team" came into contact with Kevin Dizmang based on a report that he was having a "psychotic breakdown" and was possibly suicidal. As a result of Defendants Reed and Fishers' physical assault, Kevin Dizmang died.

## PARTIES:

2. Decedent Plaintiff, by and through his Estate, Kevin Dizmang, was at all times mentioned a resident of Colorado.

3. Personal Representative Kenda James, daughter and appointed personal representative of Kevin Dizmang's Estate, pursuant to El Paso County case 23PR30630, is and was at all times a resident of Colorado.

4. Defendant Sean Reed is and was at all times mentioned a police officer employed by the Colorado Springs Police Department ("CSPD"), and a member of the Critical Response Team 3 ("CRT3").

5. Defendant Nick Fisher is and was at all times mentioned a paramedic, employed by the Colorado Springs Fire Department, and a member of the Critical Response Team 3 ("CRT3").

## JURSIDICTION AND VENUE

6. Plaintiff Estate, through its personal representative Kenda James, brings this survival action, pursuant to C.R.S. § 13-21-202.

7. This action arises under the Constitution and laws of the United States and is brought through 42 U.S.C. § 1983, and the Constitution of the State of Colorado through C.R.S. § 13-21-131.

8. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 because, as is shown more fully in this Complaint, Plaintiffs' claims arise under the Constitution and laws of the United States.

9. Jurisdiction over Plaintiff's pendent state law claims is proper under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims arising under federal law that they form part of the same case or controversy.

10. Venue is proper in the United States District Court for the District of Colorado pursuant to both 28 U.S.C. § 1391(b)(1) and (2). Specifically, venue is proper under 28 U.S.C. § 1391(b)(1) because all of the events and omissions alleged herein occurred within the State of Colorado. Venue is also proper under 28 U.S.C. § 1391(b)(2) because at the time of the

3

events and omissions giving rise to this litigation, all of the Defendants resided in Colorado, the state in which the District of Colorado is located.

## RECITATION OF FACTS

11. On November 15th, 2022, members of the Colorado Springs Police Department Crisis Response Unit responded to a call regarding Kevin Dizmang, who was reported to be having psychotic breakdown. Kevin Dizmang was reported, by his family, to be experiencing severe symptoms related to his documented history of PTSD and schizophrenia. Family members were also concerned that Kevin might be under the influence, but could not confirm this fact.

12. As a result of this reported psychotic breakdown, Kevin's family reported that he was damaging some of his own property, notably an RV trailer in which he lived alone, located at 220 Mount View Lane, in Colorado Springs. Importantly, the reporting party, Kevin's ex-wife did not report that Kevin was threatening anyone, damaging anyone else's property, or committing any crimes. Kevin's ex-wife reported believing that Kevin was possibly attempting suicide by walking out into traffic near his home.

13. Mount View Lane, specifically the Cragmor Mobile Home Park, where Kevin lived, is a very busy street, with heavy traffic. Additionally, the call from Kevin's ex-wife was received at 5:03 PM, during rush hour traffic on a Tuesday evening.

14. In response to the call, "CRT3" responded to Kevin's location. CRT3 is a "Crisis Response Team that consists of an [police] officer, a fire department medic, and a case worker." Specifically, CRTs respond to "conduct welfare checks, suicidal people, emotionally disturbed people, and people in crisis." While a police officer is a part of the CRT, their

4

purpose is to preserve and save lives and prevent people who may be in danger of harming themselves from doing so.

15. CRT3 consisted of Colorado Springs Police Department Officer Sean Reed, Colorado Springs Fire Department Paramedic Nick Fisher, and licensed clinician Andrea Alban.

16. Upon arrival to Kevin's location, Officer Reed and Paramedic Fisher observed Kevin in the on the sidewalk of Mount View Lane, bent over with his hands on his knees.

17. A few concerned citizens surrounded Kevin, trying to ensure that he did not walk back into traffic on Mount View Lane.  However, upon the arrival of CRT3 and the approach of Officer Reed, Kevin walked back into traffic, where he again bent over with his hands on his knees.

18. Upon Officer Reed's approach to Kevin, Kevin immediately said "HELP me," then walked, in an obviously confused manner, further into the road.  Kevin repeatedly said "please" to Officer Reed as he ambled in a clearly confused and panicked state, walking in circles in the westbound lane of traffic.

19. Officer Reed then told Kevin "sit down or put your hands behind your back," indicating to Kevin that he intended to handcuff and arrest Kevin.  Officer Reed then proceeded to grab Kevin's left arm as he told him to put his hands behind his back.  At this point, and throughout the encounter, no officer had any information that Kevin had or was about to engage in any criminal activity.  Thus, no probable cause to arrest Kevin existed at any point during this incident.

20. Kevin responded with "I will" as Officer Reed continued to grab his arms and without giving him an opportunity to calm down and comply.

21. As Officer Reed attempted to place Kevin under arrest and in handcuffs, Kevin stepped away multiple times, walking a couple of steps, then bending over and putting his hands on his knees, breathing heavily, returning to the same physical posture he had when Officer Reed arrived to Kevin's location.

22. As Officer Reed's tone escalated for Kevin to put his hands behind his back, Kevin walked further away from the road and into a small line of trees, repeatedly stating "no!" and "please don't" all while breathing heavily and in an obviously stressed and panicked state. At no point did Kevin attempt to flee or take any violent actions against any of the CRT3 personnel.

23. As Kevin stood in the thin tree line, approximately 20 feet from the road, Paramedic Fisher suddenly and violently tackled Kevin, driving him face down into the ground, and landing Kevin on his right side.

24. Once on the ground, Fisher put Kevin into a chokehold while Reed took Kevin's hands and placed them in handcuffs behind his back. Fisher maintained this chokehold, by wrapping his arms around Kevin's neck, severely impacting Kevin's ability to breathe, for approximately 30 seconds, at which point Kevin quit moving at all.

25. Fisher then rolled Kevin face down onto the ground, and placed his hands on the back of Kevin's neck and driving his body weight downward, pushing Kevin's neck and face into the ground. At this point, Kevin remained completely motionless.

26. Fisher stayed in this position, with his body weight on Kevin's neck and back for approximately forty-five (45) seconds, and Kevin remained completely unresponsive. After approximately forty-five (45) seconds on laying on top of Kevin while he was unresponsive, Fisher and Reed rolled Kevin into a seated position. At this point Kevin still had a faint pulse, but was clearly struggling to breathe and was totally unresponsive to any questions or commands:



27. A concerned citizen from the mobile home park where Kevin lived, repeatedly asked Kevin to "talk to me," however Kevin never responded. Officer Reed called for AMR to respond, as Kevin was clearly unresponsive and unconscious, yet he and Fisher left him in handcuffs.

28. Despite being unresponsive and unconscious, Kevin remained handcuffed behind his back for nearly seven (7) minutes before he was loaded onto a stretcher and moved into an ambulance.

7

29. Once loaded into the ambulance, medical staff began attempting life-saving resuscitation measures, however Kevin never regained consciousness.

30. Kevin was transported to the emergency room at Penrose hospital, where emergency room staff continued to attempt life-saving measures, however they were unsuccessful and Kevin was pronounced dead at 6:16 PM by Dr. Michael Loew.

## AUTOPSY:

31. Subsequently, an autopsy was conducted by the El Paso County Coroner's office. Kevin's Death was ruled to be a homicide, specifically that Kevin died as a result of cardio-pulmonary arrest as a result of "physical restraint":

**FINAL DIAGNOSIS:**

I. Cardiopulmonary arrest in the setting of physical restraint, acute methamphetamine intoxication, COPD and asthma, cardiomegaly, diaphragmatic paralysis, and obesity:

    A. Physical restraint:
        1. Per provided body camera footage and reports, the decedent became unresponsive while physically restrained in a prone position outdoors with a described "bear hug" hold during a police-involved encounter for possible suicidal behavior/running into traffic.
        2. Provided body camera footage reviewed.

**OPINION:** It is my opinion that Kevin Dizmang, a 63-year-old white male, died as a result of cardiopulmonary arrest in the setting of physical restraint, acute methamphetamine intoxication, COPD and asthma, cardiomegaly, diaphragmatic paralysis, and obesity. This injury was incurred in a police-involved encounter.

Comment: The contribution of physical restraint to the cause of death results in the determination of a manner of homicide.

32. Kevin's autopsy was reviewed and signed off on by five (5) different doctors: Dr. Allison Cooper, Dr. Megan Kliesner, Dr. Jarod Murdoch, Dr. Emily Russell-Knisley, and Dr. Leon Kelly.

**EMERGENCY ROOM STATEMENTS OF FISHER**

33. As if engaging in an unlawful chokehold against a man clearly in crisis was not enough, Paramedic Fisher had the bravado to brag and laugh about his take down of Kevin with another police officer and a charge nurse at the Penrose Hospital ER, just outside the hospital room Kevin was in, while ER staff was conducting chest compressions in an attempt to save Kevin's life:



34. The following is an exchange that took place between a currently unknown charge nurse (shown above), paramedic Fisher, and CSPD Officer Cochrane:

    a. Nurse: "He was that big BIG fucker?"
    b. Cochrane laughs.
    c. Nurse, to Cochrane and Fisher: "well you brought him DOWN, you took him DOWN."
    d. Cochrane and Fisher laugh.

9

e. Nurse: "You ARRESTED that boy"
f. Fisher: "No the cop did.  He was chasing him, but then we lost him between this little grove of trees, and so I was like [puts his hands up and shrugs]. So my first time taking someone down with this job [laughs, smirks] I don't know what I'm supposed to do."
g. Nurse: acts out a football tackle, Cochrane and Fisher laugh.



h. Fisher: "So another clinician told me, she was like 'go help restrain him," so I go to pull drugs out and she was like "no, go help him," well then I was like "high school football!"
i. Nurse: "Well good form homie!"
j. Cochrane: "yeah good form!"

10

    k. Nurse: "DAMNNNN" as he turns around and looks into Kevin's room to see that ER staff is actively doing chest compressions on Kevin in an attempt to save his life.

## FIRST CLAIM FOR RELIEF

### Civil Action for Wrongful Death C.R.S. §13-21-201, et seq.

(against Defendant Fisher and Reed)

35. Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

36. Colorado law prohibits the use of a "chokehold" by a peace officer. C.R.S. §18-1-707(2.5). A chokehold is defined as "a method by which a person applies sufficient pressure to a person to make breathing difficult or impossible and includes but is not limited to any pressure to the neck, throat, or windpipe that may prevent or hinder breathing or reduce intake of air." C.R.S. § 18-1-707(2.5)(b)(I). A chokehold also means "applying pressure to person's neck on either side of the windpipe, but not to the windpipe itself, to stop the flow of blood to the brain via the carotid arteries." C.R.S. § 18-1-707(2.5)(b)(II). As made clear in the autopsy and video, Defendant Fisher used a chokehold against Plaintiff, at the direction of other members of the CRT, and it caused Plaintiff's death.

37. Colorado law further prohibits persons in the role of Fisher, a paramedic and member of a team directed by a peace officer, from using force that the peace officer would not be permitted to use. *See* C.R.S. § 18-1-707(5), (6), (7).

38. Plaintiff Estate, brings this Wrongful Death action against both Defendants Reed and Fisher, pursuant to C.R.S. § 13-21-202, and asserts that the conduct of both Defendant Fisher and Reed was willful, wanton and in bad faith.

39. Both Fisher and Reed's actions as herein described, individually and in concert, proximately caused emotional and physical injury to Decedent which proximately resulted in Decedent's death.

40. The conduct and actions of Fisher and Davis were reckless, violations of their duties they owed to Decedent, violations of his civil rights and were willful and wanton. Their conduct is not immune from liability because of any governmental immunity.

41. Plaintiff Estate is entitled to damages and judgment against both Defendants in the maximum amount authorized by law.

42. Plaintiff Estate assert that Defendants Fisher and Reeds' actions constituted a Felonious Killing, pursuant to C.R.S. § 15-11-803(1)(b). Plaintiff asserts that Defendants' actions were the actual and proximate cause of the death of Decedent, and that said actions meet the elements of First Degree Murder, pursuant to C.R.S. § 18-3-102(1)(a), Second Degree Murder, pursuant to C.R.S. § 18-3-103(1), and or Manslaughter pursuant to C.R.S. §18-3-104(1)(a). Plaintiff petitions this court to declare a finding as such, in accordance with C.R.S. § 15-11-803(7)(b). As previously contained herein, Fisher and Reed left Kevin Dizmang in handcuffs, long after he became unresponsive, then later joked and bragged about what Fisher had done, just outside Kevin Dizmang's ER room, while hospital staff was actively attempting life saving measures.

43. Defendants' unjustified and violent seizure and assault upon Kevin Dizmang caused him to experience great physical pain, injury, terror and ultimately his death.

## **SECOND CLAIM FOR RELIEF**

**Civil Action for Deprivation of Rights-Unauthorized and Excessive Use of Force, as Defined in C.R.S. § 18-1-707**

**Article II Section 7 of the Colorado Constitution- Unauthorized Use of Force**

**4th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. §1983**

(against Defendant Fisher)

44. Plaintiff Estate hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

45. Plaintiff Estate brings this count against Defendants for the unlawful use of physical force. C.R.S. § 18-1-707(1) permits an officer to use of physical force only "if nonviolent means would be ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury to the peace officer or another person." In this incident, Defendants' use of force was not justified in anyway. Kevin Dizmang was killed by this unauthorized use of force.

46. Colorado law prohibits the use of a "chokehold" by a peace officer. C.R.S. §18-1-707(2.5). A chokehold is defined as "a method by which a person applies sufficient pressure to a person to make breathing difficult or impossible and includes but is not limited to any pressure to the neck, throat, or windpipe that may prevent or hinder breathing or reduce intake of air." C.R.S. § 18-1-707(2.5)(b)(I). A chokehold also means "applying pressure to person's neck on either side of the windpipe, but not to the windpipe itself, to stop the flow

13

of blood to the brain via the carotid arteries." C.R.S. § 18-1-707(2.5)(b)(II). As made clear in the autopsy and video, Defendant Fisher used a chokehold against Plaintiff, at the direction of other members of the CRT, and it caused Plaintiff's death.

47. Colorado law further prohibits persons in the role of Fisher, a paramedic and member of a team directed by a peace officer, from using force that the peace officer would not be permitted to use. *See* C.R.S. § 18-1-707(5), (6), (7).

48. Defendants here were called to conduct a welfare check on Plaintiff and thus had no basis for any level of violent physical force. C.R.S. § 18-1-707(1) codifies when a peace officer may use physical force. Those circumstances are limited to when 1) nonviolent means would be ineffective in effecting an arrest, 2) preventing an escape, or 3) preventing an imminent threat of injury to the peace officer or another person. *Id*. Again, the CRT was called to assist Plaintiff with a potential mental break and did not have any information to believe that he had or was about to engage in any criminal activity. Further, Plaintiff committed no crimes in the presence of the CRT, nor did any circumstances exist to believe that Plaintiff was a danger to any person other than himself. Despite this, Defendants caused Plaintiff's death through their physical restraint of him, namely a chokehold.

49. This conduct resulted in the unconstitutional search and seizure of Kevin Dizmang, and directly and proximately resulted in his death.

## THIRD CLAIM FOR RELIEF

## Civil Action for Breach of Duty to Intervene in Unlawful and Excessive Force, in Violation of Article II Section 7 of the Colorado Constitution- Unauthorized Use of Force

### 4th Amendment to the U.S. Constitution, pursuant to C.R.S. § 18-8-802 and C.R.S. §13-21-131; and 42 U.S.C. § 1983

(against Defendant Reed)

50. Plaintiff Estate hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

51. Plaintiff Estate further brings a Breach of Duty to Intervene action against Defendant Fisher, pursuant to C.R.S. § 18-8-802 and C.R.S. § 13-21-121 and 42 U.S.C. § 1983. As alleged herein, Reed not only failed to intervene in Fisher's use of excessive force, which constituted a violation of Article II Section 7 of the Colorado Constitution and the 4th Amendment to the U.S. Constitution but in fact contributed to the physical assault by handcuffing Kevin Dizmang behind his back, and leaving him in that position after he became unresponsive.

52. Kevin Dizmang was damaged and injured by Defendant Reed's intentional failure to intervene and stop the ongoing assault on Kevin Dizmang. As the Directing Peace Officer for CRT3, Officer Reed had the actual authority and duty to order Fisher to stop choking Kevin Dizmang. However he did not do so, but chose instead to contribute to the assault and leave Kevin Dizmang in handcuffs after he became unresponsive as a result of Fisher's physical assault. Defendants directly and proximately caused Kevin Dizmang's unconstitutional search and seizure, and directly and proximately resulted in his death.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants for such sum that will fairly and adequately compensate Plaintiff for his damages, injunctive relief, punitive damages, and for such other and further relief as the Court deems just and proper under the circumstances, and for his attorneys fees, costs incurred and expended.

Plaintiff requests a jury trial.

/s/ Kevin Mehr
 **KEVIN MEHR, #49108**
 Mehr Law PLLC
 3107 W. Colorado Ave.
 #184
 Colorado Springs, CO 80904
 719-315-4606
 Kevin.mehr@mehrlawcolorado.com

 /S/ Harry M. Daniels
 **HARRY DANIELS**
 4751 Best Road
 Suite 490
 Atlanta, GA 30337
 daniels@harrymdaniels.com
 678-664-8529

 /S/Bakari Sellers
 **BAKARI SELLERS**
 Strom Law Firm
 6923 N Trenholm Rd.
 Columbia, SC 29206
 Bsellers@stromlaw.com
 803-252-4800

 Dated:  February 13, 2024

16