IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-423-CNS-MDB

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity,
NICK FISHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

## DEFENDANT FISCHER'S MOTION TO DISMISS

Defendant, **NICK FISCHER** (misspelled in the caption), through his undersigned counsel, **SGR, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(1) and (6), hereby moves the Court for an order dismissing with prejudice Plaintiff's Complaint and Jury Demand [ECF No. 6-1] ("Complaint"), and states as follows:

### STATEMENT OF CONFERRAL

Pursuant to Civ. Practice Standard 7.1B(b), the parties have conferred and Plaintiff is opposed.

### I.    INTRODUCTION

This case arises out of a crisis response incident whereby members of the Colorado Springs Crisis Response Team were called to assist Kevin Dizmang, who was experiencing the effects of methamphetamine, a psychotic breakdown, and attempting suicide by walking into traffic. Mr. Dizmang remained non-complaint by refusing

numerous verbal commands from Officer Sean Reed and by physically resisting Officer Reed's attempts to subdue him for treatment. In an effort to assist Officer Reed in subduing Mr. Dizmang so that he could be assessed and properly treated, Defendant Nick Fischer—a paramedic—took Mr. Dizmang to the ground. Once Mr. Dizmang was secured, Defendant Fischer began assessing and treating Mr. Dizmang. Mr. Dizmang later died. The incident was captured via Officer Reed's body-worn camera.

Mr. Dizmang's Estate ("Plaintiff") brings the following claims against Defendant Fischer: (1) wrongful death, pursuant to C.R.S. § 13-21-201, *et seq.*; (2) excessive force, pursuant to 42 U.S.C. § 1983 ("Section 1983") and C.R.S. § 13-21-131 ("ELEIA"); and (3) deliberate indifference to medical needs, pursuant to Section 1983 and ELEIA. Defendant Fischer is entitled to sovereign immunity as to the wrongful death claim for Plaintiff's failure to plead willful and wanton conduct. With respect to Plaintiff's ELEIA claims, Defendant Fischer is not a "peace officer" and such claims are therefore not cognizable. Lastly, with respect to Plaintiff's Section 1983 claims, Defendant Fischer is entitled to qualified immunity. Defendant Fischer should therefore be dismissed with prejudice.

## II.   STANDARD OF REVIEW

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." FED.R.CIV.P. 12(b)(1). "A defect in subject matter jurisdiction can never be waived and may be raised at any time." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076–77 (10th Cir. 1999); *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1345 (10th Cir. 2014). The issue of sovereign immunity implicates subject matter jurisdiction

under Rule 12(b)(1). *L.J. v. Carricato*, 413 P.3d 1280, 1288 (Colo. App. 2018); *Martinez v. Est. of Bleck*, 379 P.3d 315, 319–22 (Colo. 2016) (applying sovereign immunity standard to public employees); *Williams v. City of Arvada*, 2022 WL 1102532, at *14 (D. Colo. Apr. 13, 2022) (collecting cases). When assessing a factual challenge to subject matter jurisdiction, "a district court may not presume the truthfulness of the complaint's factual allegations … [and] has wide discretion to allow [outside materials] to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Lasser v. Charter Commc'ns, Inc.*, 2020 WL 2309506, at *2 (D. Colo. Feb. 10, 2020) (quoting *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.* The burden of establishing the Court's subject matter jurisdiction lies with Plaintiff. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). Plaintiff's wrongful death claim is challenged under this standard.

In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). A plaintiff, however, may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim [for] relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Plaintiff's Section 1983 and ELEIA claims are challenged under this standard.

### III. ARGUMENT

#### A. Plaintiff's wrongful death claim fails for lack of willful and wanton conduct.

The Colorado Governmental Immunity Act ("CGIA") provides no waiver for the type of conduct alleged in the Complaint. *See* COLO.REV.STAT § 24-10-106. When no waiver applies, the CGIA bars tort liability as to public employees where the conduct at issue does not amount to a "willful and wanton" act. *See Martinez*, 379 P.3d at 319; *Quintana v. Dodge*, No. 23-1113, 2024 WL 1048959, at *3 (10th Cir. Mar. 11, 2024). Conduct is willful and wanton when the defendant *consciously disregards* the danger at issue. *Estate of George v. City of Rifle, Colo.*, 85 F.4th 1300, 1322 (10th Cir. 2023). A conscious disregard of the danger sufficient to show willful and wanton conduct occurs "only when" (1) "the conduct had been specifically calculated to cause the alleged harm" or (2) "the defendant had been aware that the conduct would cause the harm." *Quintana*, 2024 WL 1048959, at *3 (citing *McDonald v. Wise*, 769 F.3d 1202, 1218 (10th Cir. 2014)); *see also Wilson v. Meyer*, 126 P.3d 276, 282–83 (Colo. App. 2005) (reasoning that the complaint had failed to allege willful and wanton conduct, for purposes of immunity, because the plaintiff had not alleged facts showing that the defendant calculated her conduct to cause the harm or was aware that the conduct would cause the harm).

Nowhere in the Complaint does Plaintiff allege Defendant Fischer's purported conduct was specifically calculated to cause Mr. Dizmang's death or to injure him in any way. Nor does Plaintiff allege Defendant Fischer was consciously aware of such an outcome. What is more, the video of the incident does not demonstrate a conscious

4

disregard on behalf of anyone on scene, much less Defendant Fischer. To the contrary, the video shows Defendant Fischer repeatedly pleading with Mr. Dizmang to "listen to the officer, sir" as Mr. Dizmang continued to fight and struggle. [**Exhibit A**, 01:20–01:25, 01:35–01:40].[1] Defendant Fischer then tells Mr. Dizmang that "we are here to help you" as Mr. Dizmang continues to resist. [**Exhibit A**, 02:00–02:08]. Contrary to Plaintiff's allegations, the video also shows Defendant Fischer did not place "his full bodyweight" onto Mr. Dizmang—Defendant Fischer's knees and lower body remained on the ground and his arms were extended across Mr. Dizmang's shoulders. [**Exhibit A**, 02:29]. Seconds later, when Mr. Dizmang loses consciousness, Defendant Fischer asks Mr. Dizmang "are you alright?" [**Exhibit A**, 02:36–02:43]. As soon as Mr. Dizmang is secured, Defendant Fischer and Officer Reed lift Mr. Dizmang into a seated position and Defendant Fischer immediately begins his medical assessment by evaluating Mr. Dizmang's breathing and pulse. [**Exhibit A**, 02:50–03:05]. Nothing in the video demonstrates a conscious disregard for Mr. Dizmang's life. Defendant Fischer is therefore entitled to sovereign immunity.

### B.   Plaintiff's ELEIA claims are not plausible.

Plaintiff's excessive force and deliberate indifference claims are premised, in part, on the ELEIA, which creates a right of action against "peace officers" (as defined in

---

[1] **Exhibit A**: Video footage of incident, conventionally submitted to the Court via thumb drive. The Court can consider this footage under Rule 12(b)(1), as discussed above. The Court can also consider this footage under Rule 12(b)(6) because: (1) it is referenced in the pleadings [*see* Complaint, ¶¶ 36 and 46], (2) it is central to the claims given it captures what took place, and (3) Plaintiff cannot dispute its authenticity. *Est. of Ronquillo by & through Est. of Sanchez v. City & Cty. of Denver*, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016).

C.R.S. § 24-13-901(3)) for violations of Article II of the Colorado Constitution. COLO.REV.STAT. § 13-21-131(1). C.R.S. § 24-31-901(3) defines "peace officer" as "any person employed by a political subdivision of the state required to be certified by the P.O.S.T. board pursuant to section 16-2.5-102, a Colorado state patrol officer as described in section 16-2.5-114, and any noncertified deputy sheriff as described in section 16-2.5-103(2)."

This definition does not encompass paramedics. As a paramedic, Defendant Fischer is not required to be P.O.S.T. certified nor is this alleged. He is therefore not a "peace officer" and is not subject to liability under ELEIA.

### C. Plaintiff's Section 1983 claims are not plausible.

Turning to Plaintiff's Section 1983 claims for Fourth Amendment excessive force and Fourteenth Amendment deliberate indifference, Defendant Fischer asserts qualified immunity. Plaintiff therefore bears the "heavy two-part burden" of adequately alleging: (1) how Defendant Fischer violated Mr. Dizmang's constitutional rights, and (2) that such violation(s) were clearly established at the time of the alleged conduct. *See Shepherd v. Robbins,* 55 F.4th 810, 815 (10th Cir. 2022); *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015); *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The qualified immunity defense "protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 269 F.3d 1179, 1185 (10th Cir. 2001). The Court may conduct its qualified immunity analysis in whichever order it believes best suits this case. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If

6

Plaintiff fails to satisfy either prong of this inquiry, the Court must grant qualified immunity. *Harrington*, 268 F.3d at 1186.

    1.    *No underlying Fourth Amendment violation: no seizure.*

"To state an excessive force claim under the Fourth Amendment, plaintiffs must show *both* that a seizure occurred and that the seizure was unreasonable." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (emphasis in original) (citation omitted). The Tenth Circuit has not opined on whether a paramedic who acts to restrain an individual during a welfare-check/medical-assist effectuates a Fourth Amendment "seizure." Courts that have addressed this question, however, have determined the answer turns on whether the defendant was acting "to enforce the law, deter or incarcerate." *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 222 (6th Cir. 2007) (finding no seizure where paramedics subdued decedent for purposes of providing treatment); *see also McKenna v. Edgell*, 617 F.3d 432, 439 (6th Cir. 2010) ("We conclude that whether the [officials] were entitled to qualified immunity depends on whether they acted in a law-enforcement capacity or in an emergency-medical-response capacity..."); *Cardenas v. Collins*, 2017 WL 3167659, at *6 (D.N.M. June 9, 2017) ("EMT Defendants were [not] attempting to achieve any other goal than to provide medical aid when they held Plaintiff's arms, and, therefore, no reasonable jury could find that EMT Defendants unreasonably seized Plaintiff by the arms."); *Vanlandingham v. City of Oklahoma City*, No. CIV-22-209-D, 2022 WL 16541215, at *4 (W.D. Okla. Oct. 28, 2022) ("Although Plaintiff alleges the medical responders acted

7

incompetently or negligently in restraining Mr. Vanlandingham, Plaintiff provides no facts from which to conclude they assumed a law enforcement role.").

The Complaint illustrates Defendant Fischer was acting in his capacity as a medical provider when he assisted in subduing Mr. Dizmang. Specifically, Plaintiff acknowledges that the purpose of the "Crisis Response Team" (or "CRT3") which Defendant Fischer was a part of was to "save lives and prevent people who may be in danger [of] harming themselves from doing so," and that "the very purpose of their dispatch to the scene was to provide medical assistance to Mr. Dizmang." [Complaint, ¶¶ 14, 54]. The Complaint further alleges Defendants had no "information that [Mr. Dizmang] had or was about to engage in criminal activity" and that "no probable cause ... existed at any point during the incident." [Complaint, ¶ 19]. Indeed, Officer Reed expressly told Mr. Dizmang: "you are not under arrest." [**Exhibit A**, 00:40–00:45]. The Complaint also lacks any substantiating facts which plausibly show Defendant Fischer, by taking Mr. Dizmang to the ground, was attempting to enforce the law, deter or incarcerate Mr. Dizmang—as opposed to merely subduing him for purposes of providing medical treatment and to ensure the safety of everyone on scene. As soon as Mr. Dizmang was secured, Defendant Fischer immediately began his medical assessment, and an ambulance was called to transport Mr. Dizmang to the hospital. [**Exhibit A**, 02:50–03:15]. Minutes later, Mr. Dizmang was uncuffed and loaded into the ambulance, where Defendant Fischer (and others) attempted additional life-saving techniques. [**Exhibit A**, 09:05–12:30]. Because Defendant Fischer did not effectuate a seizure under these circumstances, the excessive force claim should be dismissed.

### 2. No underlying Fourteenth Amendment violation: no deliberate indifference, no conscience-shocking conduct.

"Due-process claims built on the special-relationship doctrine have four elements. First, the plaintiff must demonstrate the existence of a special relationship, meaning that the plaintiff completely depended on the state to satisfy basic human needs. Second, the plaintiff must show that the defendant knew that the plaintiff was in danger or failed to exercise professional judgment regarding that danger. Third, the plaintiff must show that the defendant's conduct caused the plaintiff's injuries. And finally, fourth, the defendant's actions must shock the conscience." *Dahn v. Amedei*, 867 F.3d 1178, 1185–86 (10th Cir. 2017) (internal citations omitted). When deciding whether conduct shocks the conscience, courts must bear in mind "three basic principles highlighted by the Supreme Court in evaluating substantive due process claims: (1) the need for restraint in defining their scope, (2) the concern that § 1983 not replace state tort law, and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Isaacs v. Konawa Pub. Sch.*, No. 21-7016, 2022 WL 1100402, at *3 (10th Cir. Apr. 13, 2022) (citing *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)). "When governmental officials face a situation calling for fast action, only official conduct done with an *intent to harm* violates the Fourteenth Amendment. The intent to harm standard is not limited to situations calling for split-second reactions. Rather, it applies whenever decisions must be made in haste, under pressure, and frequently without the luxury of a second chance." *Id.* (cleaned up) (emphasis added).

9

For purposes of this Motion, Plaintiff has failed to plead the second and fourth elements of his claim. For instance, The Complaint provides no allegations regarding Defendant Fischer's subjective mindset with respect to any danger facing Mr. Dizmang. While Plaintiff alleges Mr. Dizmang appeared to be in severe distress, including respiratory distress, and that Mr. Dizmang had asked for help [Complaint, ¶¶ 54–55], it is also undisputed Mr. Dizmang refused Officer Reed's orders and did not submit to medical treatment until Defendant Fischer assisted in subduing him. [**Exhibit A**, 00:01–02:50]. It can therefore not be said that Defendant Fischer, by taking an action meant to facilitate the provision of medical treatment, failed to exercise professional judgment in doing so. Nor does the video or the allegations demonstrate conscience-shocking conduct. Again, the video shows a rapidly evolving situation involving a distressed and intoxicated individual who was wandering through traffic and refusing lawful orders while in close proximity to multiple bystanders/Good Samaritans. As such, it was Plaintiff's burden to plead Defendant Fischer intentionally harmed Mr. Dizmang. *Isaacs*, 2022 WL 1100402, at *3. But as previously discussed at length, nothing in the video or Complaint shows Defendant Fischer meant to hurt Mr. Dizmang or cause his death. To the contrary, the video illustrates Defendant Fischer's intentions were to subdue Mr. Dizmang in order to provide him with proper medical care.

    3.    *No clearly established law.*

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotations omitted). "To satisfy this high threshold, there

must exist Supreme Court or Tenth Circuit precedent on point or, alternatively, the established weight of authority from other courts must support the plaintiff's view of the law." *Wright v. City of Ponca City*, No. 22-6137, 2023 WL 5765848, at *5 (10th Cir. Sept. 7, 2023)[2] (citing *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010)). The law is not clearly established unless this precedent "place[s] the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). "A reasonable official possesses the requisite understanding if 'courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue.'" *Wright*, 2023 WL 5765848, at *5 (citing *Buck v. City of Albuquerque*, 549 F.3d 1269, 1290 (10th Cir. 2008) (cleaned up). "The dispositive question [for qualified immunity] is whether the violative nature of particular conduct is clearly established," and "[t]his inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (quotations and emphasis omitted).

Plaintiff cannot identify clearly established law which would have put Defendant Fischer on notice that his actions violated Plaintiff's Fourth or Fourteenth Amendment rights under the alleged circumstances. Namely, he cannot provide a dispositive case whereby an emergency medical provider was deemed to have seized an individual for purposes of the Fourth Amendment, much less a case where a paramedic was deemed to have used excessive force under these circumstances. Nor can Plaintiff identify a

---

[2] Cert. denied sub nom. *Wright v. Ponca City, OK*, No. 23-738, 2024 WL 1143677 (U.S. Mar. 18, 2024).

case where a paramedic was found to have violated substantive due process by assisting in subduing an outwardly intoxicated and resistive individual for purposes of administering medical treatment during a welfare check. Defendant Fischer is therefore similarly entitled to qualified immunity on this basis.

**WHEREFORE**, Defendant Fischer respectfully request that this Court grant relief as follows:

    A.    Dismiss the Complaint with prejudice;

    B.    Enter judgment in favor of Defendant Fischer and against Plaintiff for attorney fees and costs in connection with the above referenced claims; and

    C.    Such further and other relief as the Court deems just and proper.

Respectfully submitted this 9th day of April, 2024.

    *s/* Eric M. Ziporin
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
eziporin@sgrllc.com

*s/* Jonathan N. Eddy
**Jonathan N. Eddy**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
jeddy@sgrllc.com
*Attorneys for Defendant Fischer*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 9th day of April, 2024, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT FISCHER'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Kevin Mehr, Kevin.mehr@mehrlawcolorado.com
Harry Daniels, Daniels@harrymdaniels.com
Bakari Sellers, Bsellers@stromlaw.com
*Counsel for Plaintiff*

                                                */s/ Carol J. Kelly*
                                                Legal Secretary