# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CIVIL ACTION NO. 1:24-CV-00423-CNS-MDB

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity,
NICK FISCHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

## SECOND AMENDED COMPLAINT AND JURY DEMAND

Plaintiff Estate of Kevin Dizmang, by and through its personal representative Kenda James, and attorneys Kevin Mehr of Mehr Law PLLC, Harry Daniels of the Law Offices of Harry M. Daniels, LLC and Bakari Sellers of the Strom Law Firm, respectfully alleges for this Complaint and Jury Demand as follows:

## PARTIES

1. Decedent Plaintiff, by and through his Estate, Kevin Dizmang, was at all times mentioned a resident of Colorado.

2. Personal Representative Kenda James, daughter and appointed personal representative of Kevin Dizmang's Estate, pursuant to El Paso County case 23PR30630, is and was at all times a resident of Colorado.

1

3. Defendant Sean Reed is and was at all times mentioned a police officer employed by the Colorado Springs Police Department ("CSPD"), and a member of the Critical Response Team 3 ("CRT3").

4. Defendant Nick FISCHER is and was at all times mentioned a paramedic, employed by the Colorado Springs Fire Department, and a member of the Critical Response Team 3 ("CRT3").

## JURSIDICTION AND VENUE

5. Plaintiff Estate, through its personal representative Kenda James, brings this survival action, pursuant to C.R.S. § 13-21-202.

6. This action arises under the Constitution and laws of the United States and is brought through 42 U.S.C. § 1983, and the Constitution of the State of Colorado through C.R.S. § 13-21-131.

7. Subject-matter jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 because, as is shown more fully in this Complaint, Plaintiffs' claims arise under the Constitution and laws of the United States.

8. Jurisdiction over Plaintiff's pendent state law claims is proper under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's claims arising under federal law that they form part of the same case or controversy.

9. Venue is proper in the United States District Court for the District of Colorado pursuant to both 28 U.S.C. § 1391(b)(1) and (2). Specifically, venue is proper under 28 U.S.C. § 1391(b)(1) because all of the events and omissions alleged herein occurred within the State of Colorado. Venue is also proper under 28 U.S.C. § 1391(b)(2) because at the time of the events and omissions giving rise to this litigation, all of the Defendants resided in Colorado, the state in which the District of Colorado is located.

## RECITATION OF FACTS

10. On November 15th, 2022, members of the Colorado Springs Police Department Crisis Response Unit responded to a call regarding Kevin Dizmang, who was reported to be having psychotic breakdown. Kevin Dizmang was reported, by his family, to be experiencing severe symptoms related to his documented history of PTSD and schizophrenia. Family members were also concerned that Kevin might be under the influence, but could not confirm this fact.

11. As a result of this reported psychotic breakdown, Kevin's family reported that he was damaging some of his own property, notably an RV trailer in which he lived alone, located at 220 Mount View Lane, in Colorado Springs. Importantly, the reporting party, Kevin's ex-wife did not report that Kevin was threatening anyone, damaging anyone else's property, or committing any crimes. Kevin's ex-wife reported believing that Kevin was possibly attempting suicide by walking out into traffic near his home.

12. In response to the call, "CRT3" responded to Kevin's location. CRT3 is a "Crisis Response Team that consists of an [police] officer, a fire department medic, and a case worker." Specifically, CRTs respond to "conduct welfare checks, suicidal people, emotionally disturbed people, and people in crisis." While a police officer is a part of the CRT, their purpose is to preserve and save lives and prevent people who may be in danger of harming themselves from doing so.

13. CRT3 consisted of Colorado Springs Police Department Officer Sean Reed, Colorado Springs Fire Department Paramedic Nick FISCHER, and licensed clinician Andrea Alban.

14. Upon arrival to Kevin's location, Officer Reed and Paramedic FISCHER observed Kevin in the on the sidewalk of Mount View Lane, bent over with his hands on his knees. Kevin was displaying obvious respiratory distress.

15. A few concerned citizens surrounded Kevin, trying to ensure that he did not walk back into traffic on Mount View Lane. However, upon the arrival of CRT3 and the approach of Officer Reed, Kevin walked back into traffic, where he again bent over with his hands on his knees, again displaying obvious respiratory distress.

16. Upon Officer Reed's approach to Kevin, Kevin immediately said "HELP me," then walked, in an obviously confused manner, further into the road. Kevin repeatedly said "please" to Officer Reed as he ambled in a clearly confused and panicked state, walking in circles in the westbound lane of traffic.

17. Officer Reed then told Kevin "sit down or put your hands behind your back," indicating to Kevin that he intended to handcuff and arrest Kevin. Officer Reed then proceeded to grab Kevin's left arm as he told him to put his hands behind his back. At this point, and throughout the encounter, no officer had any information that Kevin had or was about to engage in any criminal activity. Thus, no probable cause to arrest Kevin existed at any point during this incident.

18. Kevin responded with "I will" as Officer Reed continued to grab his arms and without giving him an opportunity to calm down and comply.

19. As Officer Reed attempted to place Kevin under arrest and in handcuffs, Kevin stepped away multiple times, walking a couple of steps, then bending over and putting his hands on his knees, breathing heavily, returning to the same physical posture he had when Officer Reed arrived to Kevin's location.

20. As Officer Reed's tone escalated for Kevin to put his hands behind his back, Kevin walked further away from the road and into a small line of trees, repeatedly stating "no!" and "please don't" all while breathing heavily and in an obviously stressed and panicked state. At no point did Kevin attempt to flee or take any violent actions against any of the CRT3 personnel.

21. As Kevin stood in the thin tree line, approximately 20 feet from the road, Paramedic FISCHER suddenly and violently tackled Kevin, driving him face down into the ground, and landing Kevin on his right side.

22. Once on the ground, FISCHER put Kevin into a chokehold while Reed took Kevin's hands and placed them in handcuffs behind his back. FISCHER maintained this chokehold, by wrapping his arms around Kevin's neck, severely impacting Kevin's ability to breathe, for approximately 30 seconds, at which point Kevin quit moving at all. The autopsy described FISCHER's actions as a "bear hug."

23. FISCHER then rolled Kevin face down onto the ground, and placed his hands on the back of Kevin's neck and driving his body weight downward, pushing Kevin's neck and face into the ground. At this point, Kevin remained completely motionless.

24. FISCHER stayed in this position, with his body weight on Kevin's neck and back for approximately forty-five (45) seconds, and Kevin remained completely unresponsive. After approximately forty-five (45) seconds on laying on top of Kevin while he was unresponsive, FISCHER and Reed rolled Kevin into a seated position. At this point Kevin still had a faint pulse, but was clearly struggling to breathe and was totally unresponsive to any questions or commands:

5



25. A concerned citizen from the mobile home park where Kevin lived, repeatedly asked Kevin to "talk to me," however Kevin never responded. Officer Reed called for AMR to respond, as Kevin was clearly unresponsive and unconscious, yet he and FISCHER left him in handcuffs.

26. Despite being unresponsive and unconscious, Kevin remained handcuffed behind his back for nearly seven (7) minutes before he was loaded onto a stretcher and moved into an ambulance.

27. Despite Kevin being unresponsive, Paramedic FISCHER took no actions to provide medical care or resuscitate Kevin until over nine (9) minutes had passed and he had been loaded into the back of the ambulance. Comments made by Paramedic FISCHER, such as "He's not aspirating" and "I want to attempt a nasal airway," indicate his awareness of Kevin's condition, however he took no steps to provide any care to him until he was loaded into the ambulance and AMR staff began resuscitative measures.

28. Paramedic FISCHER's failure to provide any medical care to Kevin during this period of time was unreasonable and fell below the standard of care imposed upon paramedic professionals,

and ultimately caused or directly contributed to Kevin Dizmang's death.  (See Exhibit 1-Affidavit of Merit from Geo Henderson.)

29. Kevin was transported to the emergency room at Penrose hospital, where emergency room staff continued to attempt life-saving measures, however they were unsuccessful and Kevin was pronounced dead at 6:16 PM by Dr. Michael Loew.

## AUTOPSY

30. Subsequently, an autopsy was conducted by the El Paso County Coroner's office.  Kevin's Death was ruled to be a homicide, specifically that Kevin died as a result of cardio-pulmonary arrest as a result of "physical restraint":

**FINAL DIAGNOSIS:**

I. Cardiopulmonary arrest in the setting of physical restraint, acute methamphetamine intoxication, COPD and asthma, cardiomegaly, diaphragmatic paralysis, and obesity:

   A. Physical restraint:
      1. Per provided body camera footage and reports, the decedent became unresponsive while physically restrained in a prone position outdoors with a described "bear hug" hold during a police-involved encounter for possible suicidal behavior/running into traffic.
      2. Provided body camera footage reviewed.

**OPINION:** It is my opinion that Kevin Dizmang, a 63-year-old white male, died as a result of cardiopulmonary arrest in the setting of physical restraint, acute methamphetamine intoxication, COPD and asthma, cardiomegaly, diaphragmatic paralysis, and obesity.  This injury was incurred in a police-involved encounter.

Comment:  The contribution of physical restraint to the cause of death results in the determination of a manner of homicide.

7

31. Kevin's autopsy was reviewed and signed off on by five (5) different doctors: Dr. Allison Cooper, Dr. Megan Kliesner, Dr. Jarod Murdoch, Dr. Emily Russell-Knisley, and Dr. Leon Kelly.

## EMERGENCY ROOM STATEMENTS OF FISCHER

32. As if engaging in an unlawful chokehold against a man clearly in crisis was not enough, Paramedic FISCHER had the bravado to brag and laugh about his take down of Kevin with another police officer and a charge nurse at the Penrose Hospital ER, just outside the hospital room Kevin was in, while ER staff was conducting chest compressions in an attempt to save Kevin's life:



33. The following is an exchange that took place between a currently unknown charge nurse (shown above), paramedic FISCHER, and CSPD Officer Cochrane:

    a. Nurse: "He was that big BIG fucker?"
    b. Cochrane laughs.

8

c. Nurse, to Cochrane and FISCHER: "well you brought him DOWN, you took him DOWN."
d. Cochrane and FISCHER laugh.
e. Nurse: "You ARRESTED that boy"
f. FISCHER: "No the cop did. He was chasing him, but then we lost him between this little grove of trees, and so I was like [puts his hands up and shrugs]. So my first time taking someone down with this job [laughs, smirks] I don't know what I'm supposed to do."
g. Nurse: acts out a football tackle, Cochrane and FISCHER laugh.



h. FISCHER: "So another clinician told me, she was like 'go help restrain him," so I go to pull drugs out and she was like "no, go help him," well then I was like "high school football!"
i. Nurse: "Well good form homie!"
j. Cochrane: "yeah good form!"

9

    k. Nurse: "DAMNNNN" as he turns around and looks into Kevin's room to see that ER staff is actively doing chest compressions on Kevin in an attempt to save his life.

34. This conversation with the charge nurse removes all doubt that FISCHER's actions here were willful and wanton- he executed a football style tackle and "bear hug" on Kevin Dizmang, a man in clear respiratory and medical distress, and then failed to provide any medical care, ultimately resulting in Kevin Dizmang's death. FISCHER's tackle and subsequent "bear hug" of Kevin Dizmang were intentional actions that were done without any regard to the safety of Kevin Dizmang.

## FIRST CLAIM FOR RELIEF

Civil Action for Wrongful Death C.R.S. §13-21-201, et seq.

(against Defendant FISCHER and Reed)

35. Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

36. Colorado law prohibits the use of a "chokehold" by a peace officer. C.R.S. §18-1-707(2.5). A chokehold is defined as "a method by which a person applies sufficient pressure to a person to make breathing difficult or impossible and includes but is not limited to any pressure to the neck, throat, or windpipe that may prevent or hinder breathing or reduce intake of air." C.R.S. § 18-1-707(2.5)(b)(I). A chokehold also means "applying pressure to person's neck on either side of the windpipe, but not to the windpipe itself, to stop the flow of blood to the brain via the carotid arteries." C.R.S. § 18-1-707(2.5)(b)(II). As made clear in the autopsy and video, Defendant FISCHER used a chokehold against Plaintiff, at the direction of other members of the CRT, and it caused Plaintiff's death.

37. Colorado law further prohibits persons in the role of FISCHER, a paramedic and member of a team directed by a peace officer, from using force that the peace officer would not be permitted to use. *See* C.R.S. § 18-1-707(5), (6), (7).

38. Plaintiff Estate, brings this Wrongful Death action against both Defendants Reed and FISCHER, pursuant to C.R.S. § 13-21-202, and asserts that the conduct of both Defendant FISCHER and Reed was willful, wanton and in bad faith.

39. Both FISCHER and Reed's actions as herein described, individually and in concert, proximately caused emotional and physical injury to Decedent which proximately resulted in Decedent's death.

40. The conduct and actions of FISCHER and Reed were reckless, violations of their duties they owed to Decedent, violations of his civil rights and were willful and wanton. Their conduct is not immune from liability because of any governmental immunity.

41. Plaintiff Estate is entitled to damages and judgment against both Defendants in the maximum amount authorized by law.

42. Plaintiff Estate assert that Defendants FISCHER and Reeds' actions constituted a Felonious Killing, pursuant to C.R.S. § 15-11-803(1)(b). Plaintiff asserts that Defendants' actions were the actual and proximate cause of the death of Decedent, and that said actions meet the elements of First Degree Murder, pursuant to C.R.S. § 18-3-102(1)(a), Second Degree Murder, pursuant to C.R.S. § 18-3-103(1), and or Manslaughter pursuant to C.R.S. §18-3-104(1)(a). Plaintiff petitions this court to declare a finding as such, in accordance with C.R.S. § 15-11-803(7)(b). As previously contained herein, FISCHER and Reed left Kevin Dizmang in

11

handcuffs, long after he became unresponsive, then later joked and bragged about what FISCHER had done, just outside Kevin Dizmang's ER room, while hospital staff was actively attempting life saving measures.

43. Defendants' unjustified and violent seizure and assault upon Kevin Dizmang caused him to experience great physical pain, injury, terror and ultimately his death.

## **SECOND CLAIM FOR RELIEF**

Civil Action for Deprivation of Rights-Unauthorized and Excessive Use of Force, as Defined in

C.R.S. § 18-1-707

Article II Section 7 of the Colorado Constitution- Unauthorized Use of Force

4th Amendment to the U.S. Constitution, pursuant to 42 U.S.C. §1983

(against Defendant FISCHER)

44. Plaintiff Estate hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

45. Plaintiff Estate brings this count against Defendants for the unlawful use of physical force. C.R.S. § 18-1-707(1) permits an officer to use of physical force only "if nonviolent means would be ineffective in effecting an arrest, preventing an escape, or preventing an imminent threat of injury to the peace officer or another person." In this incident, Defendants' use of force was not justified in anyway. Kevin Dizmang was killed by this unauthorized use of force.

46. Colorado law prohibits the use of a "chokehold" by a peace officer. C.R.S. §18-1-707(2.5). A chokehold is defined as "a method by which a person applies sufficient pressure to a person to make breathing difficult or impossible and includes but is not limited to any pressure to the

12

neck, throat, or windpipe that may prevent or hinder breathing or reduce intake of air." C.R.S. § 18-1-707(2.5)(b)(I). A chokehold also means "applying pressure to person's neck on either side of the windpipe, but not to the windpipe itself, to stop the flow of blood to the brain via the carotid arteries." C.R.S. § 18-1-707(2.5)(b)(II). As made clear in the autopsy and video, Defendant FISCHER used a chokehold against Plaintiff, at the direction of other members of the CRT, and it caused Plaintiff's death.

47. Colorado law further prohibits persons in the role of FISCHER, a paramedic and member of a team directed by a peace officer, from using force that the peace officer would not be permitted to use. *See* C.R.S. § 18-1-707(5), (6), (7).

48. Defendants here were called to conduct a welfare check on Plaintiff and thus had no basis for any level of violent physical force. C.R.S. § 18-1-707(1) codifies when a peace officer may use physical force. Those circumstances are limited to when 1) nonviolent means would be ineffective in effecting an arrest, 2) preventing an escape, or 3) preventing an imminent threat of injury to the peace officer or another person. *Id*. Again, the CRT was called to assist Plaintiff with a potential mental break and did not have any information to believe that he had or was about to engage in any criminal activity. Further, Plaintiff committed no crimes in the presence of the CRT, nor did any circumstances exist to believe that Plaintiff was a danger to any person other than himself. Despite this, Defendants caused Plaintiff's death through their physical restraint of him, namely a chokehold.

49. This conduct resulted in the unconstitutional search and seizure of Kevin Dizmang, and directly and proximately resulted in his death.

## THIRD CLAIM FOR RELIEF

Civil Action for Breach of Duty to Intervene in Unlawful and Excessive Force, in Violation of

Article II Section 7 of the Colorado Constitution- Unauthorized Use of Force

4th Amendment to the U.S. Constitution, pursuant to C.R.S. § 18-8-802 and C.R.S. §13-21-131;

and 42 U.S.C. § 1983

(against Defendant Reed)

50. Plaintiff Estate hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

51. Plaintiff Estate further brings a Breach of Duty to Intervene action against Defendant FISCHER, pursuant to C.R.S. § 18-8-802 and C.R.S. § 13-21-121 and 42 U.S.C. § 1983. As alleged herein, Reed not only failed to intervene in FISCHER's use of excessive force, which constituted a violation of Article II Section 7 of the Colorado Constitution and the 4th Amendment to the U.S. Constitution but in fact contributed to the physical assault by handcuffing Kevin Dizmang behind his back, and leaving him in that position after he became unresponsive.

52. Kevin Dizmang was damaged and injured by Defendant Reed's intentional failure to intervene and stop the ongoing assault on Kevin Dizmang. As the Directing Peace Officer for CRT3, Officer Reed had the actual authority and duty to order FISCHER to stop choking Kevin Dizmang. However he did not do so, but chose instead to contribute to the assault and leave Kevin Dizmang in handcuffs after he became unresponsive as a result of FISCHER's physical assault. Defendants directly and proximately caused Kevin Dizmang's unconstitutional search and seizure, and directly and proximately resulted in his death.

### FOURTH CLAIM FOR RELIEF

Civil Action for Deprivation of Rights Under C.R.S. §13-21-131

Article II Section 3; 42 U.S.C. § 1983, 14th Amendment- Deliberate Indifference to

Medical Needs/Care

(against Defendant FISCHER)

53. Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

54. Mr. Dizmang needed medical care when the Defendants and other members of the CRT arrived on scene. In fact, the very purpose of their dispatch to the scene was to provide medical assistance to Mr. Dizmang. Upon arrival, it was objectively clear to Defendants that Mr. Dizmang was in both physical and mental distress. Mr. Dizmang's statements and physical posture/appearance made this objectively apparent to Defendants. Mr. Dizmang immediately asked for "help" from the CRT members, and repeatedly bent over, resting his hands on his knees exhibiting obvious signs of respiratory distress.

55. Defendant FISCHER disregarded these objectively apparent signs that Mr. Dizmang was in physical and mental distress, to include obvious respiratory distress, when he tackled Mr. Dizmang, placed him a chokehold, and then laid with his full body weight on Mr. Dizmang's back as he lay face down on the ground. Further, Defendants kept Mr. Dizmang handcuffed behind his back for several minutes after he became non-responsive.

56. This deprivation of Mr. Dizmang's obvious medical needs was a clear disregard of his rights under Article II Section 3, 20 and 25 of the Colorado Constitution, and the 14th Amendment to the U.S. Constitution. This deprivation of Mr. Dizmang's Constitutional rights caused him great pain, trauma and ultimately his death.

15

## FIFTH CLAIM FOR RELIEF

Civil Action for Negligence, Professional Medical/EMT/Paramedic Malpractice

(against Defendant FISCHER)

57. Plaintiff hereby incorporates all other paragraphs of the Complaint as if fully set forth herein.

58. When Defendant FISCHER was called to the scene to conduct a welfare check on Mr. Dizmang because of his reported "psychotic break," he owed a duty to Mr. Dizmang to provide him medical care. However, instead of doing so, Defendant FISCHER took violent physical actions against Mr. Dizmang that ultimately caused his death.

59. When Defendant FISCHER tackled Kevin Dizmang to the ground, then placed him into a "bear hug," Mr. Dizmang became completely unresponsive. Mr. Dizmang, immediately upon FISCHER's arrival, displayed repeated and obvious signs of respiratory distress. Despite this obvious medical condition, FISCHER used physical restraint and violence against Kevin Dizmang, in disregard of accepted and legal law enforcement practices.

60. Additionally, upon Kevin Dizmang becoming unresponsive, and FISCHER recognizing his immediate respiratory malfunction, he failed to provide any medical care for over nine (9) minutes. This violent action, followed by his failure to provide medical care directly caused and or contributed to Kevin Dizmang's death.

61. Defendant FISCHER's failure to provide medical care to Kevin Dizmang fell well short of the standard of care for professional paramedics, and was thus negligent.

62. Plaintiff Estate, in support of this claim provides, pursuant to C.R.S. §13-20-602, a Certificate of Review, by expert and licensed paramedic Geo Henderson. (Exhibit 1- Affidavit of Merit/Certificate of Review).

63. As a direct and proximate cause of FISCHER's failure to act to the standard of a licensed and reasonable paramedic, Kevin Dizmang died.

**WHEREFORE**, Plaintiff prays for a judgment against Defendants for such sum that will fairly and adequately compensate Plaintiff for his damages, injunctive relief, punitive damages, and for such other and further relief as the Court deems just and proper under the circumstances, and for his attorneys fees, costs incurred and expended.

Plaintiff requests a jury trial.

/s/ Kevin Mehr
KEVIN MEHR, #49108
Mehr Law PLLC
3107 W. Colorado Ave. #184
Colorado Springs, CO 80904 719-315-4606
Kevin.mehr@mehrlawcolorado.com

/s/ Harry M. Daniels
HARRY DANIELS
4751 Best Road
Suite 490
Atlanta, GA 30337
678-664-8529
daniels@harrymdaniels.com

/s/Bakari Sellers
BAKARI SELLERS
Strom Law Firm
6923 N Trenholm Rd.
Columbia, SC 29206
803-252-4800
Bsellers@stromlaw.com

Dated: June 5, 2024

## CERTIFICATE OF SERVICE

Above signed counsel hereby certifies that on June 5, 2024, a true and accurate copy of the SECOND AMENDED COMPLAINT, was served via CM/ECF on the following counsel for defendants:

Counsel for Defendants

Eric M. Ziporin, Jonathan Eddy
Counsel for Defendant Fischer SGR, LLC
3900 E. Mexico Avenue, Suite 700
Denver, CO 80210
Phone: 303-320-0509
Fax: 303-320-0210
eziporin@sgrllc.com

Sara L. Cook, Esq.
Counsel for Defendant Reed Vaughan & DeMuro 1
11 South Tejon Street, Suite 545
Colorado Springs, CO 80903
Phone: 719-578 5500
Fax: 578-5504
scook@vaughandemuro.com

/s/ Harry M. Daniels
HARRY DANIELS
4751 Best Road
Suite 490
Atlanta, GA 30337
678-664-8529
daniels@harrymdaniels.com