IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-423-CNS-MDB

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity,
NICK FISCHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

## PLAINTIFF'S RESPONSE TO DEFENDANT FISCHER'S MOTION TO DISMISS

COMES NOW Plaintiff Kenda James, personal representative for the Estate of Kevin Dizmang, by and through her attorneys Kevin Mehr of Mehr Law PLLC, Harry Daniels of the Law Offices of Harry M. Daniels, LLC and Bakari Sellers of the Strom Law Firm, respectfully file this response to Defendant Nick Fischer's Motion to Dismiss, and states as follows:

## INTRODUCTION

On November 15, 2022, members of the Colorado Springs Police Department Crisis Response Unit responded to a call regarding Kevin Dizmang (hereinafter "Kevin"), who was reported to be having psychotic breakdown. Kevin was reported, by his family, to be experiencing severe symptoms related to his documented history of PTSD and schizophrenia. Upon arrival to Kevin's location, Officer Sean Reed (hereinafter "Officer Reed") and Paramedic Nick Fischer (hereinafter "Defendant Fischer") observed Kevin on the sidewalk of Mount View Lane, bent over with his hands on his knees. Kevin was displaying obvious respiratory distress. As Officer Reed's tone escalated for Kevin to put his hands behind his back, Kevin walked further away from the

road and into a small line of trees, repeatedly stating "no!" and "please don't" all while breathing heavily and in an obviously stressed and panicked state. At no point did Kevin attempt to flee or take any violent actions against any of the CRT3 personnel.

As Kevin stood in the thin tree line, approximately 20 feet from the road, in an effort to assist Officer Reed, Defendant Fischer suddenly and violently tackled Kevin, driving him face down into the ground and landing Kevin on his right side. Once on the ground, Defendant Fischer put Kevin into a chokehold while Reed took Kevin's hands and placed them in handcuffs behind his back. Defendant Fischer maintained this chokehold, by wrapping his arms around Kevin's neck, severely impacting Kevin's ability to breathe, for approximately 30 seconds, at which point Kevin quit moving at all. The autopsy described Defendant Fischer's actions as a "bear hug."

Defendant Fischer then rolled Kevin face down onto the ground and placed his hands on the back of Kevin's neck and driving his body weight downward, pushing Kevin's neck and face into the ground. At this point, Kevin remained completely motionless. Defendant Fischer stayed in this position, with his body weight on Kevin's neck and back for approximately forty-five (45) seconds, and Kevin remained completely unresponsive. After approximately forty-five (45) seconds on laying on top of Kevin while he was unresponsive, Defendant Fischer and Reed rolled Kevin into a seated position. At this point Kevin still had a faint pulse but was clearly struggling to breathe and was totally unresponsive to any questions or commands: A concerned citizen from the mobile home park where Kevin lived, repeatedly asked Kevin to "talk to me," however Kevin never responded. Officer Reed called for AMR to respond, as Kevin was clearly unresponsive and unconscious, yet he and Defendant Fischer left him in handcuffs. Despite being unresponsive and unconscious, Kevin remained handcuffed behind his back for nearly seven (7) minutes before he was loaded onto a stretcher and moved into an ambulance. Despite Kevin being unresponsive,

Defendant Fischer took no actions to provide medical care or resuscitate Kevin until over nine (9) minutes had passed and he had been loaded into the back of the ambulance. Comments made by Defendant Fischer, such as "He's not aspirating" and "I want to attempt a nasal airway," indicate his awareness of Kevin's condition, however he took no steps to provide any care to him until he was loaded into the ambulance and AMR staff began resuscitative measures. Defendant Fischer's failure to provide any medical care to Kevin during this period of time was unreasonable and fell below the standard of care imposed upon paramedic professionals, and ultimately caused or directly contributed to Kevin's death. Kevin was transported to the emergency room at Penrose hospital, where emergency room staff continued to attempt life-saving measures, however they were unsuccessful, and Kevin was pronounced dead at 6:16 PM by Dr. Michael Loew. Subsequently, an autopsy was conducted by the El Paso County Coroner's office. Kevin's Death was ruled to be a homicide, specifically that Kevin died as a result of cardio- pulmonary arrest as a result of "physical restraint". Kevin's autopsy was reviewed and signed off on by five (5) different doctors: Dr. Allison Cooper, Dr. Megan Kliesner, Dr. Jarod Murdoch, Dr. Emily Russell-Knisley, and Dr. Leon Kelly.

**ARGUMENT AND AUTHORITY**

**A. STANDARD OF REVIEW.**

"To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "In

ruling on a motion to dismiss for failure to state a claim, all well-pleaded facts, as distinguished from conclusory allegations, must be taken as true, and the court must liberally construe the pleadings and make all reasonable inferences in favor of the non-moving party." Brokers' Choice of Am., Inc. v. NBC Universal, Inc., 861 F.3d 1081, 1105 (10th Cir. 2017) (quotations and alteration omitted).

### B. PLAINTIFF'S WRONGFUL DEATH AND MEDICAL MALPRACTICE ALLEGATION IN HER COMPLAINT SHATTERS THE PLEADING STANDARD IN ALLEGING DEFENDANT FISCHER'S CONDUCT WAS WILLFUL AND WANTON.

Where immunity is not expressly waived, state employees are shielded from tort liability "unless the act or omission causing [the] injury was willful and wanton." Colo. Rev. Stat. § 24-10-118(2)(a). The phrase willful and wanton is not defined by the CGIA. Moody v. Ungerer, 885 P.2d 200, 204-05 (Colo. 1994). Nonetheless, under general Colorado legal principles, conduct is willful and wanton only when it is done in conscious or reckless disregard of the rights of others. Id.; see also McDonald v. Wise, 769 F.3d 1202, 1218 (10th Cir. 2014) (interpreting the CGIA as requiring that a plaintiff demonstrate that the defendant's actions were calculated to cause harm or done despite awareness that the actions would cause such harm). To overcome a public employee's immunity from suit, at a minimum, a plaintiff must allege "specific facts to support a reasonable inference that the employee was consciously aware that his or her acts or omissions created danger or risk to the safety of others, and that he or she acted, or failed to act, without regard to the danger or risk." L.J. v. Carricato, 413 P.3d 1280, 1288 (Colo.App. 2018); See Hurd v. Campbell, Civil Action 22-cv-01523-RM-STV, at *21 (D. Colo. Sep. 18, 2023). Upon a cursory review of the Plaintiff's Complaint, this Court will easily find that allegations within the Complaint, alleges facts that support a reasonable inference Defendant Fischer was consciously

aware that his acts or omissions created danger or risk to the safety of Kevin and that he failed to act, without regard to the danger and risk to Kevin's health. Specifically, paragraphs 25-28 of the Complaint, at minimum creates a reasonable inference that Defendant Fischer was consciously aware that his acts or omissions created danger or risk to the safety of Kevin and that he failed to act, without regard to the danger and risk to Kevin's health. Paragraphs 25-28 of the Plaintiff's 2nd Amended Complaint alleges the following:

> 25. *A concerned citizen from the mobile home park where Kevin lived, repeatedly asked Kevin to "talk to me," however Kevin never responded. Officer Reed called for AMR to respond, as Kevin was clearly unresponsive and unconscious, yet he and FISCHER left him in handcuffs.*
>
> 26. *Despite being unresponsive and unconscious, Kevin remained handcuffed behind his back for nearly seven (7) minutes before he was loaded onto a stretcher and moved into an ambulance.*
>
> 27. *Despite Kevin being unresponsive, Paramedic FISCHER took no actions to provide medical care or resuscitate Kevin until over nine (9) minutes had passed and he had been loaded into the back of the ambulance. Comments made by Paramedic FISCHER, such as "He's not aspirating" and "I want to attempt a nasal airway," indicate his awareness of Kevin's condition, however he took no steps to provide any care to him until he was loaded into the ambulance and AMR staff began resuscitative measures.*
>
> 28. *Paramedic FISCHER's failure to provide any medical care to Kevin during this period of time was unreasonable and fell below the standard of care imposed upon paramedic professionals, and ultimately caused or directly contributed to Kevin Dizmang's death.*

In construing the pleadings and making all reasonable inferences in favor of the non-moving party, the above allegations undoubtedly established that Defendant Fischer was consciously aware that his act of not protecting Kevin's airway for over 9 minutes created a danger or risk to the safety and life of Kevin. Defendant Fischer failed to act, without regard to the danger and risk to Kevin's health. It goes without saying that breathing in oxygen is essential to life. As a

Paramedic, Defendant Fischer should have been fully aware that the lack of oxygen can lead to death. Instead, he knowingly decided not to protect Kevin's airway for 9 minutes. As previously stated, a reasonable inference existed per the allegations of the Complaint that Defendant Fischer was consciously aware that his acts or omissions created a danger or risk to the safety of Kevin and that he failed to act, without regard to the danger and risk to Kevin's health. Thus, Defendant Fischer is not entitled to the public employee's immunity from suit under the Colorado Governmental Immunity Act (CGIA).

**C. PLAINTIFF'S SECTION 1983 CLAIMS ARE PLAUSIBLE**

**I.      Violation of Kevin's 4th amendment Right from Unlawful and Excessive Seizure**

The Complaint alleges that Defendant Fischer used a chokehold against Plaintiff, at the direction of other members of the CRT, and it caused Plaintiff's death. Moreover, Defendant Fischer acknowledged in his MTD that "in an effort to *assist* Officer Reed in subduing Mr. Dizmang so that he could be assessed, properly treated, and transported to the hospital." The Plaintiff's 2nd Amendment Complaint provides facts from which to conclude that Defendant Fischer assumed a law enforcement role at the time he tackled Kevin to the ground and placed pressure on Kevin's upper back/neck while Officer Reed attempted to place Kevin in handcuffs. Thus, Defendant Fischer violated Kevin's 4th amendment Right from Unlawful and Excessive Seizure when he put on his law enforcement hat to assist Officer Reed. Further, general constitutional principles can sometimes constitute clearly established law in novel factual situations. Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007), discussed further below.

**II.     Clearly Established Law**

The Tenth Circuit has long held, "continu[ing] to use pressure on a vulnerable person's upper torso while he was lying on his stomach" would "present a substantial and totally unnecessary risk of death to the person") Weigel v. Broad, 544 F.3d 1143, 1153-55 (10th Cir. 2008).  In Weigel the Court determined that there is evidence a reasonable officer would have known that the pressure placed on Mr. Weigel's upper back as he lay on his stomach created a significant risk of asphyxiation and death. Id. His apparent intoxication, bizarre behavior, and vigorous struggle made him a strong candidate for positional asphyxiation. See Cruz v. City of Laramie, 239 F.3d 1183, 1188-89 (10th Cir. 2001) (agitated state constituted a clue to trained officer that pressure on the chest was likely to cause positional asphyxia).  The following allegations in the Plaintiff's 2nd Amended Complaint presents evidence that a reasonable officer would have known that the pressure placed on Kevin's upper back as he lay on his stomach created a significant risk of asphyxiation and death:

14. *Upon arrival to Kevin's location, Officer Reed and Paramedic FISCHER observed Kevin in the on the sidewalk of Mount View Lane, bent over with his hands on his knees.* ***Kevin was displaying obvious respiratory distress***.

15. *A few concerned citizens surrounded Kevin, trying to ensure that he did not walk back into traffic on Mount View Lane. However, upon the arrival of CRT3 and the approach of Officer Reed, Kevin walked back into traffic,* ***where he again bent over with his hands on his knees, again displaying obvious respiratory distress.***

16. *Upon Officer Reed's approach to Kevin, Kevin immediately said "HELP me," then walked, in an obviously confused manner, further into the road. Kevin repeatedly said "please" to Officer Reed as he ambled in a clearly confused and panicked state, walking in circles in the westbound lane of traffic.*

17. *Officer Reed then told Kevin "sit down or put your hands behind your back," indicating to Kevin that he intended to handcuff and arrest Kevin. Officer Reed then proceeded to grab Kevin's left arm as he told him to put his hands behind his back. At this point, and throughout the encounter, no officer had any information that Kevin had or was about to engage in any criminal activity. Thus, no probable cause to arrest Kevin existed at any point during this incident.*

18. *Kevin responded with "I will" as Officer Reed continued to grab his arms and without giving him an opportunity to calm down and comply.*

19. *As Officer Reed attempted to place Kevin under arrest and in handcuffs, Kevin stepped away multiple times, walking a couple of steps,* ***then bending over and putting his hands on his knees, breathing heavily, returning to the same physical posture he had when Officer Reed arrived to Kevin's location****.*

20. *As Officer Reed's tone escalated for Kevin to put his hands behind his back, Kevin walked further away from the road and into a small line of trees, repeatedly stating "no!" and "please don't"* ***all while breathing heavily and in an obviously stressed and panicked state.*** *At no point did Kevin attempt to flee or take any violent actions against any of the CRT3 personnel.*

Further, Officer Reed's body camera clearly shows that Defendant Fischer placed pressure on Kevin's upper back/neck as Kevin lay on his stomach. Further, the complaint alleges that an autopsy was conducted by the El Paso County Coroner's office and Kevin's death was ruled to be a homicide, specifically that Kevin died as a result of cardio-pulmonary arrest as a result of "physical restraint" ( See Plaintiff's 2nd Amend Complaint ¶ 30). However, Defendant Fischer argues that no clearly established law would put him on notice that he violated Kevin's Constitiounal rights by placing Kevin in a neck restraint/chokehold for 45 seconds. This Court should not be persuaded by Defendant Fisher's argument. The above authority placed all on notice that continuing to use pressure on a vulnerable person's upper torso while he was lying on his stomach would present a substantial and totally unnecessary risk of death to the person, especially a trained paramedic. As a trained paramedic, Defendant Fisher more likely than not possessed superior medical training, skills and knowledge that continuing use of pressure on a vulnerable person's upper torso while he was lying on his stomach would present a substantial and totally unnecessary risk of death opposed to a non-medical trained layman.

### III.   Obviously Egregious Conduct

General constitutional principles can sometimes constitute clearly established law in novel factual situations. Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007) also see Knighten v. Ramsey, No. 22-5078, at *6 (10th Cir. Apr. 19, 2023). Further, the Tenth Circuit Court of Appeals has adopted a sliding scale: The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. Waters v. Coleman, 632 F. App'x 431, 7 (10th Cir. 2015).

The death of George Floyd, a 46-year-old Black man, in May 2020 drew widespread outrage after a video circulated online showing Officer Derek Chauvin holding his knee on Mr. Floyd's neck on a Minneapolis street corner as he gasped for breath.[1] In 2021 in the aftermath of the George Floyd Murder, Colorado was one of several states to prohibit or severely limit the use of chokeholds and neck restraints by police officers in the year since the world watched Floyd plead for air as he was pinned under the knee of former officer Derek Chauvin, who was convicted of murder and manslaughter last month. Colo. Rev. Stat. § 18-1-707 states:

> **(a)** A peace officer is prohibited from using a chokehold upon another person.**(b)(I)** As used in this subsection (2.5), "chokehold" means a method by which a person applies sufficient pressure to a person to make breathing difficult or impossible and includes but is not limited to any pressure to the neck, throat, or windpipe that may prevent or hinder breathing or reduce intake of air.**(II)** "Chokehold" also means applying pressure to a person's neck on either side of the windpipe, but not to the windpipe itself, to stop the flow of blood to the brain via the carotid arteries.

Plaintiff's 2nd Amended Complaint alleged that once on the ground, Defendant Fischer put Kevin into a chokehold while Reed took Kevin's hands and placed them in handcuffs behind his back. Defendant Fischer maintained this chokehold, by wrapping his arms around Kevin's

---

[1] The New York Times, How George Floyd Died, and What Happened Next, The New York Times., July 29, 2022, https://www.nytimes.com/article/george-floyd.html

neck, severely impacting Kevin's ability to breathe, for approximately 30 seconds, at which point Kevin quit moving at all. The autopsy described Defendant Fischer's actions as a "bear hug." Defendant Fischer then rolled Kevin face down onto the ground and placed his hands on the back of Kevin's neck and driving his body weight downward, pushing Kevin's neck and face into the ground. At this point, Kevin remained completely motionless. Defendant Fischer stayed in this position, with his body weight on Kevin's neck and back for approximately forty-five (45) seconds, and Kevin remained completely unresponsive. As stated above, the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation. Waters v. Coleman, 632 F. App'x 431, 7 (10th Cir. 2015). Moreover, after the death of George Floyd, the United States Department of Justice prohibited the use of "chokeholds" and "carotid restraints."[2] The obviously egregious conduct by Defendant Fischer as alleged in the Plaintiff's 2nd Amended Complaint establishes a violation of Kevin's clearly established 4th Amendment Rights. Notably. Defendant Fischer's obviously egregious conduct killed Kevin.

### IV. PLAINTIFF'S ELEIA CLAIMS ARE PLAUSIBLE PER SE.

Colo. Rev. Stat. § 18-1-707 provides:

> Except as provided in subsection (6) of this section, a person who has been directed by a peace officer to assist him to effect an arrest or to prevent an escape from custody is justified in using reasonable and appropriate physical force when and to the extent that he reasonably believes that force to be necessary to carry out the peace officer's direction, unless he knows that the arrest or prospective arrest is not authorized.

---

[2] Office of Public Affairs Department of Justice, Department of Justice Announces Department-Wide Policy on Chokeholds and 'No-Knock' Entries, September 14, 2021, https://www.justice.gov/opa/pr/department-justice-announces-department-wide-policy-chokeholds-and-no-knock-entries

Based on the above, Colorado law prohibits persons in the role of Defendant Fischer, a paramedic, and member of a team directed by a peace officer from using force that the peace officer would not be permitted to use. *See* C.R.S. § 18-1-707(5), (6), (7). As argued above, Officer Reed would not be permitted to use pressure on a vulnerable person's upper torso while he was lying on his stomach, such act would present a substantial and totally unnecessary risk of death to the person. Further, Officer Reed would not be permitted to put Kevin in a chokehold/neck restraint. Thus, Defendant Fischer was prohibited. Based on the totality of the circumstance, the force used by Defendant Fischer was excessive and unreasonable under the circumstances. The Critical Response Team 3 ("CRT3") should have helped Kevin, instead they killed him then laughed about it at the hospital.

**WHEREFORE**, The Plaintiff respectfully request that this Court Deny Defendant Fischer's Motion to Dismiss

Respectfully submitted this 24th day of July 2024.

/s/ Harry M. Daniels
Law Offices of Harry M. Daniels, LLC
4751 Best Road
Suite 490
Atlanta, GA 30337
678-664-8529
daniels@harrymdaniels.com

Kevin Mehr, #49108
Mehr Law PLLC
3107 W. Colorado Ave. #184
Colorado Springs, CO 80904
719-315-4606
Kevin.mehr@mehrlawcolorado.com

Bakari Sellers
Strom Law Firm
6923 N Trenholm Rd. Columbia, SC 29206
803-252-4800
Bsellers@stromlaw.com

# CERTIFICATE OF SERVICE

Above signed counsel hereby certifies that on July 24, 2024, a true and accurate copy of the PLAINTIFF'S RESPONSE TO DEFENDANT FISCHER'S MOTION TO DISMISS, was served via CM/ECF on the following counsel for defendants: Counsel for Defendants

Eric M. Ziporin
Jonathan Eddy
Counsel for Defendant Fischer
SGR, LLC
3900 E. Mexico Avenue, Suite 700
Denver, CO 80210
Phone: 303-320-0509
Fax: 303-320-0210
eziporin@sgrllc.com

Sara L. Cook, Esq.
Counsel for Defendant Reed
Vaughan & DeMuro
111 South Tejon Street, Suite 545
Colorado Springs, CO 80903 Phone: 719-578 5500
Fax: 578-5504
scook@vaughandemuro.com

/s/ Harry M. Daniels
Law Offices of Harry M. Daniels, LLC
4751 Best Road
Suite 490
Atlanta, GA 30337
678-664-8529
daniels@harrymdaniels.com