**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-423-CNS-MDB

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity,
NICK FISCHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

## DEFENDANT FISCHER'S REPLY IN SUPPORT OF MOTION TO DISMISS

Defendant, **NICK FISCHER**, through his undersigned counsel, **SGR, LLC**, hereby submits his Reply in Support of Motion to Dismiss, and states as follows:

### A. Plaintiff's wrongful death and medical malpractice claims fail for lack of willful and wanton conduct.

Plaintiff misconstrues the pleading standard applicable to its wrongful death and medical malpractice claims. [*See* Response (ECF No. 44), pp. 3–4]. These claims are not challenged under Rule 12(b)(6). Instead, Defendant Fischer has invoked sovereign immunity under the CGIA and challenged the Court's subject matter jurisdiction under Rule 12(b)(1). [*See* Motion (ECF 49), pp. 2–6]. Thus, because there are no allegations Defendant Fischer intended to kill Mr. Dizmang, it was Plaintiff's burden to provide a "specific factual basis" for the Court to find Defendant Fischer was consciously aware his conduct would result in Mr. Dizmang's death. *See Quintana v. Dodge*, No. 23-1113, 2024

WL 1048959, at *3–4 (10th Cir. Mar. 11, 2024) (requiring specific factual basis "the defendant *had been aware* that the conduct would cause *the harm.*") (emphasis added) (citing *McDonald v. Wise*, 769 F.3d 1202, 1218 (10th Cir. 2014)). Plaintiff has not met this burden.

The Response (ECF No. 54, p. 5) asserts that paragraphs 25 through 28 of the Complaint demonstrate a conscious disregard (i.e., "willful and wanton" conduct). They do not. For instance, a bystander attempting to speak with Mr. Dizmang, Officer Reed calling for AMR transport (which took several minutes to arrive), and the fact Mr. Dizmang remained in handcuffs says nothing of Defendant Fischer's mindset. Nor does an alleged delay in treatment or whether such conduct complied with the "standard of care." Additionally, with respect to Defendant Fischer's comments while he assessed Mr. Dizmang, they too provide no indication he was aware that anything he was doing threatened Mr. Dizmang's life. Quite the opposite. Here, when Officer Reed asked Defendant Fischer about Mr. Dizmang's condition, Defendant Fischer responded: "He's good, he's not aspirating or anything," meaning Mr. Dizmang's lungs seemed to be clear of fluid. [**Exhibit A**, 03:55–04:05]. Defendant Fischer also stated his intentions to "start a nasal airway" during his preliminary assessment of Mr. Dizmang, which did not occur until after Mr. Dizmang had been released from the "bear hug" and moved into a seated position. [**Exhibit A**, 05:00–05:12]. None of Defendant Fischer's comments provide any

indication he was consciously aware his conduct would be fatal to Mr. Dizmang—much less a *specific factual basis* to reach such conclusion. While Plaintiff's allegations may say a great deal about the cause of Mr. Dizmang's death, they do not sufficiently plead willful and wanton conduct.

    **B.**    **Plaintiff's ELEIA claims are not plausible.**

Plaintiff again fails to allege Defendant Fischer was a "peace officer" as contemplated under ELEIA and defined at C.R.S. § 24-31-901(3). [*See generally*, Response]. Plaintiff instead attempts to rely on the Colorado Criminal Code by referencing C.R.S. § 18-1-707(5), which pertains to persons who have been "directed" by law enforcement to effectuate an "arrest" or prevent an "escape from custody." This argument fails for several reasons. First, the fact a person has been directed to assist law enforcement does not bestow a P.O.S.T. certification upon that individual. Second, Plaintiff does not (and cannot) articulate why this criminal provision has any bearing on the ability to hold a paramedic civilly liable for excessive force under Article II of the Colorado Constitution. *See Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005) ("Similarly, violations of state law and police procedure generally do not give rise to a [ ] claim for excessive force.") (cleaned up). Third, the Complaint does not allege Officer Reed directed Defendant Fischer to do anything, and the Response shows it was

3

another CRT member who told Defendant Fischer to assist Officer Reed. The ELEIA claims should be dismissed.

### C.     Plaintiff's Section 1983 claims are not plausible.

*1.     No underlying Fourth Amendment violation: no seizure.*

Plaintiff argues that simply because Defendant Fischer was (1) assisting Officer Reed in (2) subduing Mr. Dizmang, he had necessarily assumed a "law enforcement" role for purposes of effectuating a Fourth Amendment seizure. This syllogism has no basis in law, as evidenced (in part) by the fact Plaintiff has cited no supporting precedent. [*See* Response, p. 6].[1] Moreover, Plaintiff's conclusory proposition cannot be squared with precedent holding that even *police officers* are not subject to Fourth Amendment liability unless they are acting in a law enforcement role. *See, e.g.*, *McKenna v. Edgell*, 617 F.3d 432, 439–40 (6th Cir. 2010) (emphasizing reasoning behind a "function-dependent" analysis and stating: "We conclude that whether the officers were entitled to qualified immunity depends on whether they acted in a law-enforcement capacity or in an emergency-medical-response capacity when engaging in the conduct that [plaintiff] claimed violated the Fourth Amendment."); *Pena v. Givens*, 637 F. App'x 775, 781 (5th Cir. 2015) ("[W]hether the Fourth Amendment applies does not turn *solely* on whether the government officials were police officers...") (emphasis in original).

Nothing in the Complaint plausibly suggests Defendant Fischer assumed a "law enforcement" role by merely assisting Officer Reed in subduing Mr. Dizmang so that he

---

[1] *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007) is silent on this issue.

4

could be medically assessed, treated, and taken to the hospital. [Motion, pp. 8–9]. Plaintiff's Fourth Amendment claim fails for lack of an underlying seizure.

   *2.   No underlying Fourteenth Amendment violation: no deliberate indifference, no conscience-shocking conduct / intent to harm.*

Plaintiff has made no attempt to counter the arguments asserted in the Motion concerning the Fourteenth Amendment claim. [*See generally*, Response; Motion, pp. 9–11]. Plaintiff's claim should be deemed waived. *Smith v. Aetna*, 2024 WL 760162, at *5 (D. Colo. Jan. 26, 2024)[2] (citing *Cole v. New Mexico*, 58 F. App'x 825, 829 (10th Cir. 2003)). Again, Plaintiff's failure to sufficiently plead Defendant Fischer (1) acted with the requisite deliberate indifference, and/or (2) that he intended to harm Mr. Dizmang is similarly fatal to this claim. [Motion, pp. 9–11].

   *3.   No clearly established law.*

Plaintiff's assertion of clearly established law references two cases where police officers were found to have violated the Fourth Amendment by inducing positional asphyxia while effectuating an arrest. *See, e.g.*, *Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008) (denying qualified immunity for officers who restricted an arrestee's breathing for three minutes though a combination of various restraint techniques); *Cruz v. City of Laramie, Wyo.*, 239 F.3d 1183 (10th Cir. 2001) (finding Fourth Amendment violation where officers had "hog tied" the arrestee, killing him). [Response, p. 7]. But neither of these cases addresses the issue of whether a paramedic effects a seizure—and can be liable for excessive force—by restraining an individual so that he can receive medical

---

[2] Report and recommendation adopted, 2024 WL 760094 (D. Colo. Feb. 12, 2024).

5

treatment. Nor do these cases involve a 90 second struggle with a non-compliant patient during a welfare check. [**Exhibit A**, 01:28–02:58]. "Suffice it to say, a reasonable [paramedic] could miss the connection between [these] case[s] and this one." *City of Tahlequah, Oklahoma v. Bond*, 595 U.S. 9, 14 (2021).

Nor can Plaintiff's reliance on the "sliding scale" approach save its claims because the Tenth Circuit has abandoned it. *See Sanchez v. Guzman*, 105 F.4th 1285, 1293 n.1 (10th Cir. 2024). What is more, Plaintiff fails to explain how George Floyd's murder at the hands of Minneapolis police [Response, pp. 9–10] somehow elevates *Defendant Fischer's* conduct "to [a] level of egregiousness the Supreme Court and [Tenth Circuit] have declared *obviously unlawful*." *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1311 (10th Cir. 2021) (emphasis added). Meeting this high standard requires "precedents [that] render the legality of the conduct *undebatable*." *Contreras on behalf of A.L. v. Dona Ana Cnty. Bd. of Cnty. Commissioners*, 965 F.3d 1114, 1122 (10th Cir. 2020) (cleaned up, emphasis added). But here, the precedent points decisively in the opposite direction. *See Thompson v. Cope*, 900 F.3d 414, 422–24 (7th Cir. 2018) (addressing Fourth Amendment claim)

> [W]e do not think a paramedic (or his lawyer) reasonably familiar with circuit and Supreme Court precedent would have understood that the Fourth Amendment prohibition of unreasonable searches and seizures applies to treatment in the field during a medical emergency. Fourth Amendment restrictions are almost wholly alien to that situation, where paramedics are subject to a distinct set of professional standards and goals aimed at responding to medical emergencies... It [is] not clearly established that a paramedic effects a "seizure" within the meaning of the Fourth Amendment and subjects himself to an excessive force claim by [subduing] an arrestee who is suffering from a medical emergency to take the arrestee to the hospital.

6

(parenthetical in original); *Perez v. City of Fresno*, 98 F.4th 919, 928 (9th Cir. 2024) Because we conclude that the law did not clearly establish at the time of the events at issue that a paramedic restraining a person in order to secure the person for medical transport could be held liable for a constitutional violation under either the Fourth or Fourteenth Amendment, we conclude that [the paramedic] is entitled to qualified immunity."); *Wright v. City of Ponca City*, 2023 WL 5765848, at *6 (10th Cir. Sept. 7, 2023) (addressing Fourteenth Amendment claim, stating: "Absent clearly established Supreme Court or Tenth Circuit precedent indicating the EMTs could be liable in the absence of an intent to harm, the law is not clearly established... [T]he EMTs are entitled to qualified immunity and the district court did not err in dismissing the claim against the EMTs."). Defendant Fischer is similarly entitled to qualified immunity.

Respectfully submitted this 12th day of August, 2024.

*s/* Eric M. Ziporin
**Eric M. Ziporin**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
eziporin@sgrllc.com

*s/* Jonathan N. Eddy
**Jonathan N. Eddy**
SGR, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO 80210
Telephone: (303) 320-0509
jeddy@sgrllc.com
*Attorneys for Defendant Fischer*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of August, 2024, I electronically filed a true and correct copy of the above and foregoing **DEFENDANT FISCHER'S REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following email addresses:

Kevin Mehr, Kevin.mehr@mehrlawcolorado.com
Harry Daniels, Daniels@harrymdaniels.com
Bakari Sellers, Bsellers@stromlaw.com
*Counsel for Plaintiff*

Sara L. Cook, scook@vaughandemuro.com
*Counsel for Defendant Reed*

                                               */s/ Taylor Will*
                                               Legal Secretary