IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:24-cv-00423-CNS-MDB

ESTATE OF KEVIN DIZMANG,

    Plaintiff,

v.

SEAN REED, a Colorado Springs Police Officer, in his individual capacity and
NICK FISCHER, a Colorado Springs Fire Department Paramedic, in his individual capacity,

    Defendants.

## ORDER

Before the Court are two motions to dismiss, one filed by Defendant Fischer, ECF No. 49, and one filed by Defendant Reed, ECF No. 50. For the following reasons, the Court grants both motions.

### I. BACKGROUND[1]

On November 15, 2022, members of the Colorado Springs Police Department Crisis Response Unit responded to a call regarding Kevin Dizmang. ECF No. 41, ¶ 10. Mr. Dizmang was reported to be having a psychotic breakdown and was experiencing severe symptoms related to PTSD and schizophrenia. *Id.* Mr. Dizmang's family reported that he was damaging some of his property, including the RV trailer where he lived, and that he was walking out into traffic near his home, possibly attempting suicide. *Id.*, ¶ 11.

---

[1] The following facts are drawn from Plaintiff's second amended complaint. ECF No. 41. For purposes of this motion, the Court accepts as true, and views in the light most favorable to Plaintiff, all factual allegations contained in the complaint. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

A crisis response team (CRT), CRT3, responded to the call. *Id.*, ¶ 12. CRTs respond to "conduct welfare checks, suicidal people, emotionally disturbed people, and people in crisis." *Id.* CRT3 consisted of Colorado Springs Police Department Officer Sean Reed, Colorado Springs Fire Department Paramedic Nick Fischer, and licensed clinician Andrea Alban. *Id.*, ¶ 13.

Upon arrival, Defendants Reed and Fischer saw Mr. Dizmang on the sidewalk, bent over with his hands on his knees. *Id.*, ¶ 15. Bystanders were trying to ensure that Mr. Dizmang did not walk back into traffic. *Id.*, ¶ 15. Defendant Reed approached Mr. Dizmang, who walked back into traffic and bent over with his hands on his knees, displaying respiratory distress. *Id.* Mr. Dizmang said, "HELP me," then walked farther into the road. *Id.*, ¶ 16. Mr. Dizmang repeatedly said "please" and walked in circles in a "clearly confused and panicked state." *Id.* Defendant Reed then told Mr. Dizmang, "sit down or put your hands behind your back." *Id.*, ¶ 17. He then grabbed Mr. Dizmang's left arm. *Id.* Mr. Dizmang responded, "I will," as Defendant Reed continued to grab his arms. *Id.*, ¶ 18. Plaintiff alleges that Defendant Reed was attempting to arrest Mr. Dizmang. *Id.*, ¶ 16. Defendant Reed attempted to place Mr. Dizmang in handcuffs, but Mr. Dizmang stepped away and bent over again, while breathing heavily with his hands on his knees. *Id.*, ¶ 19. Defendant Reed repeatedly told Mr. Dizmang to put his hands behind his back, this time in an escalated tone, and Mr. Dizmang responded "no!" and "please don't!" while breathing heavily and appearing in a stressed and panicked state. *Id.*, ¶ 20. Mr. Dizmang did not attempt to flee or take any violent actions. *Id.*

The parties dispute what happened next. Plaintiff alleges that, as Mr. Dizmang stood in the tree line approximately 20 feet from the road, Defendant Fischer "suddenly and violently tackled" him to the ground. *Id.*, ¶ 21. As alleged, Defendant Fischer put Mr. Dizmang into a chokehold by wrapping his arms around his neck while Defendant Reed handcuffed Mr. Dizmang's hands behind his back. *Id.*, ¶ 22. Defendant Fischer maintained this hold for approximately 30 seconds. *Id.* Mr. Dizmang stopped moving. *Id.*

Defendant Fischer then rolled Mr. Dizmang face down on the ground, with his hands on the back of Mr. Dizmang's neck and "driving his body weight downward, pushing [Mr. Dizmang's] neck and face into the ground." *Id.*, ¶ 23. Plaintiff alleges that Defendant Fischer stayed in that position, "with his body weight on [Mr. Dizmang's] neck and back," for approximately forty-five seconds. *Id.*, ¶ 24. Defendants Fischer and Reed then rolled Mr. Dizmang into a seated position. *Id.* At that point, Mr. Dizmang still had a faint pulse, but he was struggling to breathe and was unresponsive to questions and commands. *Id.* A bystander repeatedly told Mr. Dizmang, "talk to me," but he never responded. *Id.*, ¶ 25. Defendant Reed called for an ambulance. *Id.* Defendants Reed and Fischer left Mr. Dizmang in handcuffs. *Id.* He remained handcuffed for nearly seven minutes before he was loaded onto a stretcher and moved into an ambulance. *Id.*, ¶ 26. As alleged, Defendant Fischer took no actions to provide medical care or resuscitate Mr. Dizmang. *Id.*, ¶ 27. Defendant Fischer commented, "He's not aspirating" and "I want to attempt a nasal airway." *Id.* Medical staff attempted resuscitation measures once Mr. Dizmang was transferred to the ambulance. *Id.*, ¶ 27. Once at the hospital, emergency room staff also

attempted life-saving measures, but Mr. Dizmang was pronounced dead at 6:16 p.m. *Id.*, ¶ 29.[2]

A subsequent autopsy ruled that Mr. Dizmang's death was a homicide as a result of cardio-pulmonary arrest caused by "physical restraint, acute methamphetamine intoxication, COPD and asthma, cardiomegaly, diaphragmatic paralysis, and obesity." *Id.*, ¶ 30. The physical restraint was described as a "bear hug" hold in a prone position. *Id.*

### III.  LEGAL STANDARDS

#### A. Rule 12(b)(1)

To survive a Rule of Civil Procedure 12(b)(1) motion to dismiss, "a plaintiff must demonstrate that the court has subject matter jurisdiction." *Audubon of Kan., v. U.S. Dep't of Interior*, 67 F.4th 1093, 1108 (10th Cir. 2023). "A Rule 12(b)(1) motion to dismiss only requires the court to determine whether it has authority to adjudicate the matter." *Kenney v. Helix TCS, Inc.*, 939 F.3d 1106, 1108 (10th Cir. 2019). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotations omitted).

A defendant may challenge subject matter jurisdiction under Rule 12(b)(1) by "facial[] attack [of] the complaint's allegations." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1000, 1002 (10th Cir. 1995). When a party brings a facial attack, courts

---

[2] Plaintiff also alleges that Defendant Fischer "had the bravado to brag and laugh about his take down" of Mr. Dizmang to a police officer and a charge nurse outside Mr. Dizmang's hospital room, and likened his restraint measures to "high school football." *Id.*, ¶¶ 32–33.

4

must accept a complaint's allegations as true. *Safe Streets Alliance v. Hickenlooper*, 859 F.3d 865, 877 (10th Cir. 2017).

### B. Rule 12(b)(6)

Under Rule 12(b)(6), the dispositive inquiry is whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court must take all the factual allegations in the complaint as true and "view these allegations in the light most favorable" to the nonmoving party. *Casanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010). On a Rule 12(b)(6) motion, a court's function is "not to weigh potential evidence that the parties might present at trial, but to assess whether the [] complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).

### III. DISCUSSION

Plaintiff brings the following claims against Defendant Fischer: (1) wrongful death, pursuant to C.R.S. § 13-21-201, *et seq*. (first claim for relief); (2) excessive force, pursuant to 42 U.S.C. § 1983, Article II Section 7 of the Colorado Constitution, and the Enhance Law Enforcement Integrity Act (ELEIA), C.R.S. § 13-21-131 (second claim for relief); (3) deliberate indifference to medical needs, pursuant to the Fourteenth Amendment via § 1983, Article II Section 3 of the Colorado Constitution, and ELEIA (fourth claim for relief);

and (4) negligence and professional/medical malpractice (fifth claim for relief). Against Defendant Reed, Plaintiff brings claims for (1) wrongful death pursuant to C.R.S. § 13-21-201, *et seq,* (first claim for relief); and (2) breach of duty to intervene in unlawful and excessive force, in violation of the Fourth Amendment via § 1983, Article II Section 7 of the Colorado Constitution, C.R.S. § 18-8-802, and C.R.S. § 13-21-131 (third claim for relief). The Court will address each motion in turn, addressing, as it should, the federal claims first.

### A. Defendant Fischer

Defendant Fischer argues that he is entitled to qualified immunity as to the § 1983 claims and to sovereign immunity as to the wrongful death and medical malpractice claims. He also argues that the ELEIA claims do not apply to him, because he is a paramedic and not a police officer. The Court will address each argument as applicable.

#### 1. Excessive Force Claims (Second Claim for Relief)

Plaintiff brings excessive force claims pursuant to: (1) the Fourth Amendment via § 1983; (2) Colorado Constitution Article II Section 7; and (3) C.R.S. § 18-8-802 and C.R.S. § 13-21-131. The Court grants the motion to dismiss the Fourth Amendment claim and declines to exercise supplemental jurisdiction as to the excessive force claim based on state law.

##### a. Fourth Amendment via Section 1983

Defendant Fischer argues that he is entitled to qualified immunity, and so Plaintiff's § 1983 claim for Fourth Amendment excessive force fails. ECF No 49 at 7. The Court agrees.

6

To survive a claim of qualified immunity, Plaintiff must adequately allege that (1) Defendant Fischer violated Mr. Dizmang's constitutional rights, and (2) those rights were clearly established at the time of the alleged conduct. *Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022). When a plaintiff fails to satisfy either prong, the Court must grant qualified immunity. *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) (citation and quotations omitted). The Court may begin its analysis with either prong. *Cox v. Wilson*, 971 F.3d 1159, 1171 (10th Cir. 2020).

Defendant Fischer argues that there is no constitutional violation because a paramedic cannot effect a Fourth Amendment seizure during a welfare check. ECF No. 49 at 7. To state a Fourth Amendment excessive force claim, plaintiffs must "show *both* that a seizure occurred and that the seizure was unreasonable." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1169 (10th Cir. 2021) (citation omitted). Defendant Fischer argues that he was acting in his capacity as a medical provider, not a law enforcement role, and so he could not effect a seizure.

Plaintiff has cited no case in the Tenth Circuit or U.S. Supreme Court discussing whether, or in what circumstances, a paramedic can effectuate a Fourth Amendment seizure.[3] However, other circuits have reasoned that the outcome depends on "the specific purpose and the particular nature of the conduct alleged in the complaint." *Peete v. Metro. Gov't of Nashville and Davidson Cnty.*, 486 F.3d 217, 220 (6th Cir. 2007). In *Peete*, the Sixth Circuit held that paramedics who were attempting to provide medical

---

[3] Plaintiff, in fact, cites no cases for this proposition. Defendants provided the caselaw discussed in this section.

7

attention did not unreasonably seize the plaintiff for the purpose of interfering with his liberty. *Id.* The paramedics "were not acting to enforce the law, deter or incarcerate," but rather were trying to help the plaintiff, and thus there was no seizure under the Fourth Amendment. The Sixth Circuit later explained that whether the Fourth Amendment applies depends on "whether the [officials] acted in a law-enforcement capacity or in an emergency-medical-response capacity." *McKenna v. Edgell*, 617 F.3d 432, 439–40 (6th Cir. 2010). Other courts have similarly differentiated between officials providing medical care and officials acting in a law enforcement capacity. *See, e.g., Pena v. Givens*, 637 F. App'x 775, 780–81 (5th Cir. 2015) (granting qualified immunity because plaintiff cited "no binding authority holding that a medical professional's restraint of an individual in an emergency medical situation constitutes a Fourth Amendment seizure"); *Stump v. City of Dallas*, No. 3:15-CV-01944-N, 2016 WL 11472363, at *5 (N.D. Tex. Feb. 26, 2016) ("[Plaintiff] never submitted to a show of authority intended to enforce, deter, or incarcerate, and therefore was not seized within the meaning of the Fourth Amendment"); *Cardenas v. Collins*, No. CV 15-880 KG/SCY, 2017 WL 3167659, at *6 (D.N.M. June 9, 2017) (finding no Fourth Amendment violation where EMT defendants transported plaintiff to a hospital against his will).

Here, based on the allegations in the complaint, it appears that Defendant Fischer was not attempting to arrest Mr. Dizmang or otherwise enforce the law; he was trying to subdue him so that he could be properly treated. Plaintiffs disagree, arguing that there are sufficient facts to demonstrate that Defendant Fischer "assumed a law enforcement role" when he tackled Mr. Dizmang, relying on the fact that Defendant Reed was

8

attempting to handcuff Mr. Dizmang. ECF No. 55 at 6. But this is insufficient. It is clear that Mr. Dizmang needed treatment and that Defendant Fischer was attempting to fulfill his role as a treatment provider. Similarly, Plaintiff argues that Defendant Fischer "was under the direction of Defendant Reed." *Id.* However, the second amended complaint appears to only allege that Defendant Fischer acted "at the direction of other members of the CRT," not at the direction of Defendant Reed. ECF No. 41, ¶¶ 36, 46.

However, regardless of whether the allegations indicate that Defendant Fischer was acting to provide medical care or was acting in a law enforcement capacity, Plaintiff does not cite to any case that suggests that a paramedic can operate in the capacity of a law enforcement officer and effect a seizure. *See id.* Even if a paramedic's attempt to provide treatment amounts to a violation of a constitutional right to be free from an unlawful seizure, the right was not clearly established. The Tenth Circuit has not opined on whether or in what circumstances a paramedic can effectuate a Fourth Amendment seizure. *See Granato v. City & Cnty. of Denver*, 2011 WL 3820730, at *6 (D. Colo. Aug. 30, 2011) (acknowledging lack of Tenth Circuit precedent on this issue). Plaintiff cites no authority holding that a medical professional's restraint of a person in an emergency medical situation constitutes a Fourth Amendment seizure, or any authority holding that similar conduct was a seizure in analogous circumstances. Therefore, regardless of whether Plaintiff adequately pleaded that Defendant Fischer effected a Fourth Amendment seizure, the law was not clearly established that he could do so. Plaintiff has

9

failed to satisfy the second prong of the qualified immunity analysis, so Defendant Fischer is entitled to qualified immunity as to the Fourth Amendment claim.[4]

### 2. Fourteenth Amendment Deliberate Indifference Claim (Claim Four)

Plaintiff brings a Fourteenth Amendment claim against Defendant Fischer for deliberate indifference to Mr. Dizmang's medical needs. However, Plaintiff did not respond to any of Defendant Fischer's arguments or otherwise brief this claim in the response. *See generally* ECF No. 54. Thus, the Court considers this claim forfeited. *See In re Rumsey Land Co., LLC*, 944 F.3d 1259, 1272 (10th Cir. 2019); *Ashaheed v. Currington*, 7 F.4th 1236, 1243 n.2 (10th Cir. 2021) ("[Plaintiff] has forfeited any argument that he alleged a *Turner* claim by failing to say so in response to [Defendant's] motion to dismiss.").

### 3. Professional and Medical Negligence Claims (Fifth Claim for Relief)

Plaintiff also brings state law negligence claims against Defendant Fischer. The Court declines to exercise supplemental jurisdiction over these claims. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims or remanding them to state court when the federal claims to which they are supplemental have dropped out before trial."). The Court dismisses the fifth claim for relief without prejudice.

---

[4] As will be explained, the Court declines to exercise supplemental jurisdiction over the related state law claims.

*4. Wrongful Death C.R.S. § 13-21-201 (First Claim for Relief)*

Plaintiff also brings a wrongful death claim pursuant to C.R.S. § 13-21-201. However, there is no predicate tort on which the wrongful death claim can be premised. C.R.S. § 13-21-201 does not create a new tort; rather, it allows plaintiffs to bring claims on behalf of a decedent. Because the Court dismissed claims two and four, to the extent that this claim is based on an underlying federal claim, the Court dismisses the claim. The Court declines to exercise supplemental jurisdiction as to the state law claims.

* * *

Thus, the Court grants Defendant Fischer's motion to dismiss and declines to exercise supplemental jurisdiction over state law claims brought here.

**B. Defendant Reed**

Plaintiff brings claims for wrongful death and breach of the duty to intervene in unlawful and excessive force against Defendant Reed. The Court dismisses both claims.

*1. Failure to Intervene (Third Claim for Relief)*

Plaintiff brings a claim for breach of the duty to intervene, in violation of the Fourth Amendment, pursuant to § 1983. Defendant Reed argues that he is entitled to qualified immunity as to the Fourth Amendment claim. The Court agrees.

The Tenth Circuit has recognized that a Fourth Amendment failure to intervene claim may be established by the following elements: (1) the defendant officer was present at the scene; (2) the defendant officer witnessed another officer applying force; (3) the application of force was such that any reasonable officer would recognize that the force

11

being used was excessive under the circumstances; and (4) the defendant officer had a reasonable opportunity to intercede to prevent the further application of excessive force, but failed to do so. *Martinez v. City & Cnty. of Denver*, No. 11-cv-00102-MSK-KLM, 2013 WL 5366980, at *5 (D. Colo. Sept. 25, 2013) (citing generally *Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). To survive qualified immunity, Plaintiff must establish that Defendant Reed violated Mr. Dizmang's Fourth Amendment rights, and that those rights were clearly established. *Shepherd*, 55 F.4th at 815.

Defendant Reed argues that Plaintiff failed to state a plausible Fourth Amendment claim, so he is entitled to qualified immunity based on the first prong. Defendant Reed does not dispute that the Tenth Circuit has recognized failure to intervene claims; however, he argues that the Tenth Circuit has not extended the failure to intervene claim to apply to force used by non-law enforcement officers. The Court agrees.

The second element of a failure to intervene claim is that the defendant witnessed "another officer" applying force. The basis of a Fourth Amendment excessive force claim is a prohibition against unreasonable seizures. *See Graham v. Connor*, 490 U.S. 386, 394–95 (1989) ("In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed. . . . In most instances, that will be [] the Fourth Amendment's prohibition against unreasonable seizures of the person. . . ."). Thus, Fourth Amendment claims are predicated on there being a seizure. A failure to intervene claim is no different: it must be based on the failure to intervene in another officer's seizure. As discussed above, paramedics who are providing emergency medical assessments are not effecting a seizure. Nor was

Defendant Fischer acting as an officer in this case. Because Defendant Fischer was not effecting a seizure, he was not "another officer applying force." Thus, Plaintiff has not sufficiently pleaded the second element. Regardless of whether the force was excessive or whether Defendant Reed had the opportunity to intercede, Plaintiff has not pleaded a Fourth Amendment violation. Plaintiff's policy arguments do not change this outcome; while it may be prudent for the duty to intervene to apply to paramedics' use of force, the Court cannot change the fact that the law does not require it. Thus, Plaintiff has failed to state a plausible failure to intervene claim.[5]

Defendant Reed is also entitled to qualified immunity based on the second prong. Plaintiff has not pointed to any Tenth Circuit precedent establishing a Fourth Amendment claim based on a failure to intervene in a paramedic's alleged use of excessive force. *See* ECF No. 55 at 5–6. Thus, there are no established principles that would inform Defendant Reed that he had a constitutional duty to intervene in a paramedic's unsolicited use of force. Defendant Reed is entitled to qualified immunity based on the second prong as well.

Plaintiff also asserts state law claims based on the failure to intervene. However, the Court declines to exercise supplemental jurisdiction over these claims. *See Barnett*, 956 F.3d at 1238. The Court dismisses the third claim for relief to the extent it is based

---

[5] Defendant Reed also argues that the factual allegations are insufficient to state a claim, specifically targeting the second and fourth elements. He argues that he did not witness Defendant Fischer using excessive force because he only had Mr. Dizmang in a chokehold for a short amount of time, during which Defendant Reed was attempting to handcuff Mr. Dizmang. He also argues that he did not have the opportunity to intervene because he was occupied with attempting to handcuff Mr. Dizmang.

on federal law, and declines to exercise supplemental jurisdiction over the state law claims.

### 2. Wrongful Death (First Claim for Relief)

Finally, Defendant Reed argues that Plaintiff's wrongful death claim fails because there is no surviving tort claim upon which the wrongful death claim can be premised. *See* ECF No. 55. The Court agrees. C.R.S. § 13-21-201 does not create a new tort but rather allows claims to be brought on behalf of a decedent. Because the Court dismissed claim three, to the extent that this claim is based on an underlying federal claim, the Court dismisses the claim. The Court declines to exercise supplemental jurisdiction as to the claims based on state law violations.

## V. CONCLUSION

Consistent with the above analysis, the Court GRANTS both Defendants' motions to dismiss. ECF Nos. 49, 50. The state law claims are dismissed without prejudice. The Clerk of Court is directed to close this case.

Dated this 28th day of February 2025

BY THE COURT:

Charlotte N. Sweeney
United States District Judge